## STUART COHN, CONSERVATOR (ESTATE OF JILL COHN) v. PACIFIC EMPLOYERS INSURANCE COMPANY (13764)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued November 1, 1989—decision released January 30, 1990

*Ira B. Grudberg,* with whom was *Alice S. Miskimin,* for the appellant (plaintiff).

*Jesse M. Frankl,* with whom was *Jean Molloy,* for the appellee (defendant).

COVELLO, J. This is an appeal from a judgment following a ruling of the trial court, *Corradino, J.,* that concluded that the defendant's insurance contract was inapplicable to the plaintiff's claim. The principal issue is whether an "excess" or "umbrella" insurance policy

provides coverage to third party claimants injured through the acts of uninsured or underinsured motorists. We conclude that neither the language of this policy nor the provisions of General Statutes § 38-175c[1] require such a result, and therefore, find no error.

---

[1] "[General Statutes] Sec. 38-175c. UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after

The relevant facts are undisputed. On August 11, 1983, the defendant, Pacific Employers Insurance Company (PEIC), had in force an "Excess Blanket Catastrophe Liability Policy," (umbrella policy) insuring Joseph Cohn & Son, Inc. (insured), a New Haven commercial painting contractor. The PEIC umbrella policy provided blanket coverage of $5,000,000, this sum to be available, however, only in the event of the exhaustion of the coverage provided by three other specifically identified policies. One of these underlying policies was the insured's automobile liability policy that provided coverage for each of twenty-two vehicles.[2] The insuring agreement[3] stated that "PEIC will *indemnify*

the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[2] The underlying automobile liability policy, No. BAP 416082, was issued by the Insurance Company of North America/Aetna (INA/Aetna) and provided bodily injury coverage in the amount of $150,000 per person with an aggregate coverage of $500,000 per occurrence, plus $100,000 property damage coverage. The umbrella policy also was in excess of an INA/Aetna general liability policy, No. CPP465373, which provided $500,000/500,000 bodily injury coverage and $100,000 property damage coverage, and an INA/Aetna employer's liability policy, No. AWSC 19767401, which provided $100,000 coverage.

[3] "A Stock Insurance Company, herein called PEIC

In consideration of the premium to be paid, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the Named Insured as follows:

INSURING AGREEMENT

Coverage A—Personal Injury Liability

Coverage B—Property Damage Liability

Coverage C—Advertising Liability

PEIC will indemnify the Insured for ultimate net loss in excess of the

*the Insured* for ultimate net loss in excess of the retained limit hereinafter stated *which the Insured shall become legally obligated to pay as damages* because of A. personal injury or B. property damage or C. advertising injury . . . . " (Emphasis added.)

retained limit hereinafter stated which the Insured shall become legally obligated to pay as damages because of

A. personal injury or

B. property damage or

C. advertising injury

to which this insurance applies, caused by an occurrence, and

(1) With respect to any personal injury, property damage or advertising injury not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance; or

(2) If limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy

PEIC will

(a) have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury, property damage or advertising injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient; but PEIC shall not be obligated to pay any claim or judgment or to defend any suit after PEIC's limit of liability has been exhausted by payment of judgments or settlements;

(b) in addition to the amount of ultimate net loss payable:

(i) pay all expenses incurred by PEIC, all costs taxed against the Insured in any suit defended by PEIC and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before PEIC has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of PEIC's liability thereon;

(ii) pay premiums on appeal bonds required in any suit, premium on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the Insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies but PEIC shall have no obligation to apply for or furnish any such bonds;

(iii) pay reasonable expenses incurred by the Insured at PEIC's request in assisting PEIC in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $50 per day.

In jurisdictions where PEIC may be prevented by law or otherwise from carrying out this agreement, PEIC will indemnify the Insured for such expense incurred with its written consent in accordance with this provision."

On August 11, 1983, the plaintiff's wife, Jill Cohn, while operating one of the insured automobiles, was severely injured in a collision at the intersection of Temple and Grove Streets in New Haven. Transamerica Insurance Company, insurer of the other vehicle involved in the collision, paid the plaintiff $25,000 which was the full amount of its liability policy. Despite the exhaustion of the limits of two other policies available to Jill Cohn that were primary to the PEIC umbrella policy and that provided underinsured motorist coverage, the total sums paid were insufficient to compensate Jill Cohn's estate for her injuries and losses.[4]

The plaintiff, the conservator of his wife's estate, made a timely demand for payment under the PEIC umbrella policy, claiming that the policy provisions were applicable to a situation where the responsible tortfeasor was an underinsured motorist. PEIC denied the claim. On April 30, 1986, the plaintiff brought suit, alleging a breach of the insurance contract. PEIC filed a motion to strike the complaint as revised in its entirety, on the ground that the insurance contract did not provide coverage under the circumstances described in the complaint.

The trial court, *Corradino, J.,* granted the motion to strike, concluding that: (1) the umbrella policy's language was unambiguous; (2) the umbrella policy did not provide underinsured motorist protection; and (3) the umbrella policy was not an "automobile liability policy" within the meaning of General Statutes § 38-175c and therefore, as a matter of law, the policy was not required to provide uninsured motorist coverage. The plaintiff declined to plead over, and on May 15, 1989, the trial court, *Quinn, J.,* rendered judgment for the

---

[4] The other insurance policies available to Jill Cohn were a household policy, issued by Hartford Accident, which provided $300,000 coverage, and a CIGNA policy issued to Joseph Cohn & Son, Inc., which provided $40,000 coverage.

defendant. The plaintiff appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

On appeal, the plaintiff first argues that the trial court erred in concluding that the language of PEIC's umbrella policy was not ambiguous. Specifically, he contends that paragraph 3 (e) of the "Conditions" section of the umbrella policy renders the policy ambiguous as to its nature and the scope of its coverage. Therefore, the plaintiff argues, according to well established principles of insurance contract construction, the policy must be interpreted in the light most favorable to the plaintiff; i.e., so as to provide underinsured motorist coverage to Jill Cohn. See, e.g., *Cody* v. *Remington Electric Shavers,* 179 Conn. 494, 497, 427 A.2d 810 (1980); *Dickinson* v. *Maryland Casualty Co.,* 101 Conn. 369, 378–79, 125 A. 866 (1924). We do not agree.

Paragraph 3 (e) of the policy states, "[a]s this policy is excess insurance, the insured warrants that coverage under the uninsured motorist laws will be maintained during the policy period. It is agreed that the Named Insured shall promptly reimburse PEIC for any amount of ultimate net loss paid on behalf of any Insured as respects any payment made under an uninsured motorist law, or any similar law."

This language is neither ambiguous nor does it broaden the scope of the policy's coverage. Rather, it describes as a condition to the policy's issuance, the circumstances under which the insured would be liable to the carrier. First, it contains the *insured's* representation that uninsured motorist coverage would be maintained during the policy period. Clearly, if paragraph 3 (e) was providing uninsured motorist coverage, as the plaintiff contends, it would not be necessary to include a representation that uninsured motorist coverage would be maintained during the policy period as

such coverage would already exist within the four corners of the very same policy. Second, paragraph 3 (e) mandates that the insured must promptly reimburse PEIC for any loss that PEIC may have to pay by reason of any uninsured/underinsured motorist law. In other words, it is the insured who is agreeing to pay PEIC for any uninsured/underinsured motorist claims, and not vice versa, as the plaintiff contends. Nowhere does PEIC agree to provide uninsured or underinsured coverage. Where the terms of a policy are clear and unambiguous, they will be given their plain and ordinary meaning. *Aschenbrenner* v. *United States Fidelity & Guaranty Co.*, 292 U.S. 80, 85, 54 S. Ct. 590, 78 L. Ed. 1137 (1934); *Beach* v. *Middlesex Mutual Assurance Co.*, 205 Conn. 246, 249, 532 A.2d 1297 (1987); *Horak* v. *Middlesex Mutual Assurance Co.*, 181 Conn. 614, 616, 436 A.2d 783 (1980); *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 509–10, 363 A.2d 1055 (1975).

The plaintiff next argues that the umbrella policy, in describing those insured, refers to "any person while using, with the permission of the Named Insured, any automobile . . . . " Since the policy contains a reference to an automobile and provides coverage for personal injuries and property damage that could conceivably flow from an automobile accident, the plaintiff contends that the umbrella policy must also be an automobile liability policy. Since it is an automobile liability policy, the plaintiff argues that the policy must provide uninsured motorist coverage as required by General Statutes § 38-175c. While we agree that § 38-175c requires that there be uninsured motorist coverage in automobile liability policies; see footnote 1, supra; we disagree that this is an automobile liability policy within the meaning of § 38-175c.

"Whether an insurance contract is a liability policy or an indemnity policy depends upon the intention of the parties, as evidenced by the phraseology of their

agreement . . . . The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured." 6A J. Appleman, Insurance § 4261, and see the cases cited therein. Page one of the policy contains the "Insuring Agreement."[5] It establishes the obligations as between the parties to the insurance contract. The first paragraph states the "PEIC will *indemnify the Insured* for ultimate net loss in excess of the retained limit . . . which the Insured shall become legally obligated to pay as damages because of . . . personal injury or . . . property damage or . . . advertising injury . . . ." (Emphasis added.) In its simplest terms, the insuring agreement provides that the parties have entered into an indemnification contract intended to reimburse the named insured should it become liable to third parties for a loss that was greater than the coverage limits of the underlying policies. Liability beyond these terms will not be extended by implication. *Miller Bros. Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 513, 155 A. 709 (1931); *Ryiz* v. *Federal Ins. Co.*, 5 Conn. App. 179, 182–83, 497 A.2d 1001 (1985); see also *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 674, 425 A.2d 131 (1979).

The entire orientation of this contract, as evidenced by its unequivocal language, is to indemnify the insured rather than to assume direct liability to injured third parties. To the extent that there may be similarities in the environment of underlying automobile policies vis a vis excess blanket catastrophe liability policies, we conclude that the term automobile liability policy as referred to in § 38-175c includes only those policies

[5] See footnote 3, supra.

that extend underlying coverage before the operation of any indemnity policy that might otherwise exist.

Other jurisdictions that have dealt with the issue of whether umbrella policies must provide uninsured or underinsured motorist coverage have held that statutory enactments similar to § 38-175c do not apply to umbrella policies. See, e.g., *Trinity Universal Ins. Co.* v. *Metzger,* 360 So. 2d 960, 962 (Ala. 1978); see also *O'Hanlon* v. *Hartford Accident & Idemnity Co.,* 639 F.2d 1019 (3d Cir. 1981); *Hartbarger* v. *Country Mutual Ins. Co.,* 107 Ill. App. 3d 391, 396, 437 N.E.2d 691 (1982); *Matarasso* v. *Continental Casualty Co.,* 82 App. Div. 2d 861, 862, 440 N.Y.S.2d 40 (1981); *Moser* v. *Liberty Mutual Ins. Co.,* 731 P.2d 406, 410 n.16 (Okla. 1987); *Thompson* v. *Grange Ins. Assn.,* 34 Wash. App. 151, 156–57, 660 P.2d 307 (1983); see generally 8A J. Appleman, Insurance § 4909.85.

There is no error.

In this opinion the other justices concurred.