[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO CONFIRM AND APPLICATION TO VACATE ARBITRATION AWARD
The defendant American Universal Insurance Company brings this application to vacate an arbitration decision awarding the plaintiff $316,000 in underinsured motorist coverage, $237,000 of which is to be paid by the defendant American Universal Insurance Company. The parties have stipulated to the following facts:
"1. On May 22, 1988, Joan Brady was the operator of a 1984 BMW automobile leased to Daniel DelVecchio and owned by the Lessor, General Electric Credit Auto Lease, Inc.
2. On said date, Joan Brady was injured when the motor vehicle that she was driving was struck by a motor vehicle operated by Richard D. Majors.
3. That said collision and injuries were the proximate result of the negligence of Richard D. Majors.
4. That at the time of the accident, Richard D. Majors was insured by The Hartford Insurance Company under an automobile liability policy of insurance providing $20,000.00 per person and $40,000.00 per accident in liability coverage.
5. The Hartford paid $20,000.00 to Joan Brady under said policy on behalf of Richard D. Majors.
6. At some time prior to May 22, 1988, in consideration of a specific premium, the defendant, Allstate Insurance Company, issued to one Daniel DelVecchio, a policy of automobile liability insurance covering a 1984 BMW automobile which said Daniel DelVecchio leased from General Electric Credit Auto Lease, Inc., CT Page 3674 bearing policy #084014529 09/11, which policy contained an arbitration agreement.
7. A copy of the un/underinsured motorist provisions of the policy and declaration sheet are annexed and marked "Exhibit A."
8. That the Allstate Insurance Companies automobile liability policy provided for underinsured motorist coverage limits of $100,000.00.
9. At some time prior to May 22, 1988, in consideration of a specific premium, the defendant, American Universal Insurance Company issued to Harry Brady, brother of the plaintiff, Joan Brady, a policy of insurance bearing policy number PA 0218563-00, which policy contained an arbitration agreement.
10. A copy of the un/underinsured motorist provisions of the policy and declaration sheet are annexed and marked "Exhibit B."
11. That American Universal Insurance Companies Automobile liability policy provided for underinsured motorist coverage limits of $300,000.00.
12. That the time of the accident the defendant, Joan Brady, was a resident relative, insured under the American Universal Insurance Company's policy with Harry Brady.
13. At some time prior to May 22, 1988, in consideration of a specific premium, the defendant, Lexington Insurance Company, issued to General Electric Credit Auto Lease, Inc., the lessor of the 1984 BMW automobile leased to Daniel DelVecchio, a policy of insurance covering motor vehicles owned by General Electric Credit Auto Lease, Inc., which policy did not contain un/underinsured coverage nor an arbitration agreement.
14. A copy of said policy is annexed and marked "Exhibit C."
15. The defendant Lexington Insurance Company, did, however, agree to arbitrate the claim of plaintiff, Joan Brady, and did join in the arbitration proceedings.
16. On July 23, 1990, the arbitrators, pursuant to agreement, made a written award, a copy of which is annexed hereto and marked "Exhibit D."
The dispute between the parties was submitted to arbitration pursuant to the insurance policy and Conn. Gen. Stat. 38-175c. On July 18, 1990, the arbitrators made a written award. This award provides in pertinent part: CT Page 3675
3. That Daniel DelVecchio was an insured under the Allstate policy which covered the car in which he was a passenger and which had un/underinsured limits of $100,000. He was also afforded coverage under a Nationwide Insurance Company policy covering two cars with a $100,000 limit on each car, making a total available underinsured coverage of $300,000.
4. That Joan Brady was an insured under the Allstate policy providing underinsured coverage of $100,000 on the car she was operating. She was also afforded underinsured coverage by an American Universal policy in the amount of $300,000 for a total of $400,000 available coverage.
5. That the claimants are not insureds under a policy issued by Lexington Insurance Company to General Electric Credit Auto Lease.
6. Having considered all claims for credits including payments made by the liability carrier for the tortfeasor and collateral sources under Tort Reform, we find that the claimant Daniel DelVecchio is entitled to a net award of $180,000. This award is to be paid as follows:
$60,000.00 by Allstate Insurance Company
$120,000.00 by Nationwide Insurance Company
We find the claimant Joan Brady is entitled to a net award of $316,000.00.
This award is to be paid as follows:
$79,000.00 by Allstate Insurance Company
$237,000.00 By American Universal Insurance Company."
On July 31, 1990, the plaintiff filed an application to confirm the arbitrator's award. On August 15, 1990, the defendant, American Universal Insurance Company, filed an application to vacate the arbitration award.
On September 6, 1990, the defendant Lexington Insurance Company filed an application to confirm the arbitrator's award.
Scope of Review
"Ordinarily, arbitration is a creature of contract whereby the parties themselves, by agreement, define the powers of the arbitrators." American Universal Ins. Co. v. DelGreco, 205 Conn. 178,185 (1987). "Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated CT Page 3676 the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes52-418." Id. "Under an unrestricted submission, the arbitrator's decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for error of law or fact." Id. at 186.
"Such is not the case with statutorily mandated or compulsory arbitration." Id. at 187. "[V]oluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." Id. Compulsory arbitration calls for a higher level of judicial review. Id. at 188.
Conn. Gen. Stat. 38-175c(a)(1)(B) provides in pertinent part: "[e]very . . .[liability] policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceedings." The arbitration in the instant case has been statutorily mandated by Conn. Gen. Stat. 38-175c(a)(1)(B). "Where compulsory arbitration required by Conn. Gen. Stat. 175c(a)(1) is undertaken under Conn. Gen. Stat.52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." Id. at 191.
In its application to vacate, the defendant American Universal Insurance Company, argues that the award of the arbitrators should be vacated pursuant to Conn. Gen. Stat.52-418 (a)(4) on the grounds that the arbitrators have exceeded their power. Conn. Gen. Stat. 52-418 provides in pertinent part:
 "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers. . . ."
Defendant American Universal contends that the arbitrators erroneously concluded that the plaintiff was not insured under the policy issued by defendant Lexington Insurance Company to General Electric Credit Auto Lease, Inc. CT Page 3677
The defendant American Universal contends that the plaintiff is entitled to underinsured motorist coverage under the automobile policy issued by the Lexington Insurance Company to General Electric Credit Auto Lease, Inc. Defendant American Universal contends that the Lexington policy is a liability policy and, pursuant to Conn. Gen. Stat. 38-175c, it is required to provide underinsured motorist coverage in an automobile liability policy.
Plaintiff argues that the regulations adopted by the Insurance Commissioner pursuant to Conn. Gen. Stat. 38-175a, exempt the Lexington Insurance Company contract from coverage because the subject policy contains an underlying insurance requirement.
Defendant Lexington Insurance Company also filed an application to confirm the arbitration award. In its brief in support of the application to confirm, Lexington argues that the arbitration decision should be confirmed on two grounds. First, the case is controlled by the Connecticut Supreme Court decision in Cohn v. Pacific Employers Insurance Co., 213 Conn. 540 (1990). Second, under the regulations to Conn. Gen. Stat. 38-175c, the requirement that every automobile liability policy contain underinsured motorist coverage does not apply to insurance afforded under a policy that contains an underlying insurance requirement.
Conn. Gen. Stat. 38-175c(a)(1) (rev'd to 1989) provides in pertinent part:
 "Every . . . [automobile liability] policy shall provide insurance, herein called uninsured motorist coverage, . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles . . . because of bodily injury, including death resulting therefrom. . . ."
The remedial purpose of underinsured motorist coverage is to make whole a person injured at the hands of uninsured/underinsured motorist. American Universal Insurance Co. v. DelGrecco [DelGreco]205 Conn. 178, 197 (1987). Uninsured motorist protection is coverage for persons not for vehicles. Harvey v. Travelers Indemnity Co.,188 Conn. 245, 250 (1982) (legislatively overruled on other grounds).
"Section 38-175a grants the insurance commissioner the authority to enact regulations governing uninsured/underinsured coverage." DelGreco, 205 Conn. at 196. "The regulations, CT Page 3678 however, must carry into effect the purpose and intent of the statute pursuant to which they are enacted. Id.
In accordance with this authority, the commissioner adopted regulation 38-175a-4 of the Regulations of Connecticut State Agencies. This section is an exception section to Conn. Gen. Stat. 38-175c. The regulation states "these regulations do not apply to the insurance afforded under any policy: . . .(2) if the policy contains an underlying insurance requirement. . . ." Conn. State Agency Regulations, 38-175a-4. With respect to the inter-relation between 38-175a-c of the Conn. Gen. Statutes and the above regulation, the Connecticut Supreme Court has said that "[a]n administrative agency's regulations are presumed valid and unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute." Travelers Ins. Co. v. Kulla, 216 Conn. 390, 399 (1990).
The only case which addresses this issue is the recent Superior Court case of Curran v. Aetna Casualty Surety Company, D.N. 347475, J.D. of Hartford/New Britain of Hartford, Memorandum of Decision on Motion for Summary Judgment, July 31, 1990, O'Neill, J. In Curran, the court held that a policy which contains an underlying insurance requirement need not provide underinsured motorist coverage under Conn. Gen. Stat. 38-175c. That decision is persuasive to this court.
Accordingly, the court concludes that, because the Lexington policy contains an underlying insurance requirement, the policy in question is not required to provide underinsured motorist coverage.
A second issue raised by the parties is whether a contingent or excess automobile liability policy must provide underinsured motorist coverage.
In Cohn v. Pacific Employers Ins. Co., 213 Conn. 540,540-541 (1990), the issue was "whether an excess or umbrella insurance policy provides coverage to third party claimants injured through the acts of uninsured or underinsured motorists." The court concluded that "the term automobile liability policy as referred to in 38-175c includes only those policies that extend underlying coverage before the operation of any indemnity policy that might otherwise exists." Id. at 547-548. Defendant, American Universal Insurance Co., contends Cohn dealt with an indemnity policy and in this case it is a liability policy. "The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged. . . ." Id. at 547. CT Page 3679
While the Lexington policy in this case may be characterized as a liability policy the holding of Cohn applies. A contingent or excess liability policy need not provide underinsured motorist coverage when the policy contains an underlying insurance requirement.
For the foregoing reasons, the motions to confirm are granted and the motion to vacate is denied. Pursuant to the parties' stipulation, interest is awarded from July 18, 1990.
Barry R. Schaller, Judge