[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The plaintiff and the defendant each move for summary judgment on the issue of whether the defendant insurer's "umbrella excess liability policy," which includes coverage for automobile liability, can be construed to provide "uninsured-underinsured motorist" coverage under Connecticut General Statutes 38-175c despite clear contractual language in the policy excluding such coverage.
The defendant moving for summary judgment is an insurance company, the New Hampshire Insurance Company. The plaintiff is M. Chandra Reddy, the administrator of his deceased son's estate. According to the complaint filed (February 7, 1989) the son was killed in an automobile accident on June 29, 1986 due solely to the negligence of one William Simonelli.
The estate subsequently collected pursuant to a settlement the policy limits of the Simonelli liability policy: $300,000. The plaintiff was insured under an "uninsured-underinsured motorist" policy by the defendant insurer ("The underlying policy"). Pursuant to an arbitration proceeding, the plaintiff was awarded $600,000 under the UM coverage of the underlying policy, exhausting that policy's coverage limits.
Now comes the plaintiff before the court claiming coverage under a policy of excess liability coverage, called a "Personal Catastrophe Liability Policy" ("the umbrella policy"), arguing that, inasmuch as automobile-related liability coverage is provided by said umbrella policy, the policy is an "automobile policy" as used in Connecticut General Statutes 38-175a and CT Page 4481 175c. (This is despite the inclusion in the policy of the following provision "[T]his policy does not apply with respect to Coverage 1A: 9. to any claim for Uninsured/Underinsured Motorists Coverage(s) or No-Fault benefits as defined in any primary policy described on Part B — Declarations.") "Automobile liability policies" are required by the latter statute to provide UM coverage whether expressed in the contract or not.
The defendant insurer in its memorandum in support of summary judgment argues that the Connecticut Supreme Court in Cohn v. Pacific Employer Ins. Co., 213 Conn. 540 (1990), has decided this issue in its favor, that Connecticut General Statutes 38-175c applies only to underlying liability policies and shall not be construed to extend to umbrella policies. The plaintiff argues that the Cohn policy was clearly an indemnity policy, where the umbrella policy here is just as clearly a liability policy, requiring under the Cohn analysis a finding that Connecticut General Statutes 38-175c does apply here. Both parties have moved for summary judgment, claiming the issue of coverage is purely a matter of law and there is no genuine issue as to any material fact.
Summary judgment is a method of resolving litigation where pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Wilson v. New Haven, 213 Conn. 277, 279 (1989). There is agreement between the parties as to all material facts and that the issues in this case are those of statutory construction, contract interpretation, and the applicability of Cohn v. Pacific Employers Ins. Co., 213 Conn. 540 (1990), to the instant case.
The analysis in Cohn was that the policy under which the claim was made was one of indemnity rather than liability. Cohn,213 Conn. at 547-48. This distinction, the plaintiffs argue, does not apply here, since the umbrella policy here is clearly a liability policy, which provides direct payment to a claimant against the insured, rather than indemnification after the insured pays. We do not agree. The plaintiff's argument exceeds the inferences which may properly be drawn from the Cohn court's analysis, inferring that the Cohn holding can be read to imply that any policy which is not clearly one of indemnification is therefore under Connecticut General Statutes 38-175c. This reads too much into the Cohn analysis. The Cohn court relies on cases from other jurisdictions which "have held that statutory enactments similar to 38-175c do not apply to umbrella policies." Cohn,213 Conn. at 548; an analysis of those cases (and those relied on by the plaintiff) reveal the extent of the Cohn holding and the better rule under the relevant facts, law and public policy. CT Page 4482
Cases relied on by the Connecticut Court in Cohn v. Pacific,203 Conn. 540 (1990):
Trinity Universal Insurance Co. v. Metzger, 360 So.2d 961, 962
(Ala. 1978):
 Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued a primary policy ("the underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute.
O'Hanlon v. Hartford Accident Indemnity Co., 639 F.2d 1019,1027 (3d Cir. 1981):
 Policies such as the INA umbrella policy under consideration here, with respect to their automobile coverages, would not exist but for underlying primary auto policies to which they provide excess liability insurance. Primary insurance policies in Delaware, by their very existence, provide insureds with all of the benefits accorded under [the uninsured motorist statute]. To place umbrella policies within the ambit of [the statute] would be to apply that section to require UM coverage in addition to that provided by primary policies. We do not believe that [the UM Statute] can be so read, and hold that it is not applicable to policies that provide excess liability insurance.
Hartbarger v. Country Mutual Ins. Co., 107 Ill. App.3d 391,427 N.E.2d 691, 693 (1982): CT Page 4483
 An Umbrella liability policy is generally designed to protect the insured from a judgment against him in an amount greater than that provided for in the underlying policies . . . Moreover the failure of the insurer to list uninsured motorist coverage in the exclusions to the umbrella policy does not create any ambiguity in view of the numerous terms limiting the umbrella policy to excess liability coverage.
Matarasso v. Continental Casualty Co., 82 App.Div.2d 861, 440 N.Y.S.2d 40,41 (1981):
 The main issue on this appeal is whether the uninsured motorist endorsement is applicable to the umbrella policy. We hold that in this case it is not . . . the umbrella policy at bar is not an automobile liability policy issued `upon any motor vehicle. . . in this state,' but is a `Commercial Umbrella Liability Policy' purchased to provide excess liability coverage for a variety of possible claims and issued upon three underlying liability policies. The claimants received the protection of [the UM statute] through their primary underlying automobile liability insurance policy and have not been left without any relief."
Moser v. Liberty Mutual Ins. Co., 731 P.2d 406, 410 n. 16 (Okla. 1987):
 We additionally note that the purpose of the umbrella liability policy here was at most tangentially related to automobile liability. In contracting for umbrella liability coverage the insured sought protection from catastrophic liability . . . The purpose of such a contract is protection against liability on the part of the insured. As the risk of smaller magnitude the premiums collected for such insurance generally reflect the lesser risk.
It should be noted that the UM statute in Oklahoma mandates UM coverage not in "every [automobile liability]" as in Connecticut General Statutes 38-175c, but rather is couched in the following broader language:
 "(A)No policy insuring against loss resulting from liability imposed by law for CT Page 4484 bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the [uninsured motorist] coverage described in subsection (B) of this section." [Emphasis added.]
The holding of the Oklahoma court reflects the finding that the relevant distinction is not between liability/indemnification policies, but excess/primary policies.
Thompson v. Grange Ins. Ass'n, 34 Wash. App. 151, 660 P.2d 307
(1983):
 Here, the Great American catastrophe policy agreed to pay only the ultimate net loss in excess of the total applicable limits of the underlying policies. Although it was, in a sense, a new policy, it was really a continuation of the primary policies, in that it provided for coverage in addition to that already existing . . . That being the case, the catastrophe policy did not need to supply any UMC . . .
The rationale of the cases relied on by the court in Cohn appears to be that the insureds in every instance had the protection of the UM statute in their underlying policies, and there was no obvious basis in the statutes, or the contracts, or, most importantly, public policy for judicially extending a statute in derogation of common law contract rights.
The plaintiff has cited cases which, it is claimed, support a finding that, where a UM statute is designed to allow an insured to set his or her own level of UM coverage, as does Connecticut's, public policy requires a result different from the Cohn case and those cited therein.
A key case relied on by the plaintiff is Southern American Insurance v. Dobson: This case, where the Louisiana Supreme Court reversed itself on rehearing from 4-3 against requiring UM coverage in the umbrella policy in question to 4-3 in favor, is supportive of the plaintiff's argument here. The Louisiana statute like Connecticut's, requires parity between the liability and UM portions of an automobile liability policy. The public policy of the two statutes appears to be that the insured may set CT Page 4485 his own limit of recovery. But in Dobson, the umbrella policy in dispute did "not expressly offer any uninsured motorists coverage." Dobson, 441 So.2d at 1186. Hence there was for the Louisiana court a palpable ambiguity as to whether the policy was within the statute: the policy was mute on the question of UM coverage. By contrast, the policy before this court proclaims that it is not an "automobile liability policy" as defined in Connecticut General Statutes 38-175c by explicitly excluding UM coverage.
None of the cases cited by the plaintiff reveal that the policies being construed had such exclusionary language. Unlike those cases, here the court is required either to interpret the policy as being outside the ambit of the UM statute (an interpretation which is in harmony with the holding of Cohn) or to read the exclusionary language out of the contract.
A contract is to be construed as a whole and all relevant provisions considered together. Sturman v. Stocha, 191 Conn. 7,12 (1983). Parties do not ordinarily insert meaningless provisions in their contracts and therefore every provision must be given effect if reasonably possible. Hatcho Corporation v. Della Pretra, 194 Conn. 18, 23 (1985).
The questions of public policy discussed in the cases relied on by the plaintiff are not properly before this court, given the presence of the exclusionary language in the umbrella insurance policy. That language and the Cohn decision leads us to conclude that the better-reasoned position in this case is that the policy at issue was intended by the parties to be outside the mandatory provisions of Connecticut General Statutes 38-175c.
Accordingly the court grants summary judgment to the defendant New Hampshire Insurance Co. and denies summary judgment to the plaintiff, M. Chandra S. Reddy.
HENNESSEY, J.