[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: VACATION AND/OR MODIFICATION OF ARBITRATION AWARD
The applications to vacate and the application to modify an arbitration award are before the court on a stipulation of facts. Inasmuch as the stipulation succinctly sets forth the pertinent facts the following is a verbatim recitation of paragraphs 1 through 18 of the stipulation:
 1. Norman Mass, the husband of the deceased, Sara Mass, was appointed Executor of his wife's estate by the Probate Court of the District of Fairfield on July 29, 1988;
 2. Daniel Mass. is the minor son of Norman and Sara Mass;
 3. Jessica Mass. is the minor daughter of Norman and Sara Mass;
 4. on and prior to April 18, 1988, Normas Mass. and the United States Fidelity and Guaranty Company (U.S.F. G.) were parties to a contract of automobile insurance covering two vehicles and providing uninsured and underinsured motorist coverage in the amount of $500,000 for each vehicle and providing for arbitration in case of a disagreement between the parties concerning uninsured and underinsured motorists claims;
 5. on and prior to April 18, 1988, Norman and Sara Mass. were parties with U.S.F. G. to an insurance policy with a face value of $1,000,000 denominated as a "personal excess policy" which listed, as underlying coverage, the U.S.F. G. insurance policy referred to in paragraph 4, above.
 6. neither Norman Mass. nor Sara Mass. ever requested, in writing or otherwise, a reduction in their uninsured or underinsured coverage from U.S.F. G;
 7. on April 18, 1988, a motor vehicle driven by Sara Mass. in which Daniel and Jessica were passengers was struck broadside on a residential street in Fairfield, Connecticut by a vehicle travelling at a speed in excess of fifty miles per hour driven by an intoxicated driver, Christopher Flynn;
 8. as a result of this collision, Sara Mass. was killed and Daniel and Jessica were injured; CT Page 3729
 9. the available insurance coverage of Christopher Flynn was exhausted by payments to the Estate of Sara Mass, Daniel Mass. and Jessica Mass. Thereafter, the Estate of Sara Mass, Daniel Mass. and Jessica Mass. submitted timely claims to U.S.F. G. for payment pursuant to the insurance policies described in paragraphs 4 and 5, above;
 10. pursuant to the insurance contracts between U.S.F. G. and Norman Mass, the claims of the Estate of Sara Mass, Daniel Mass, and Jessica Mass. for payment under these insurance policies were submitted by the parties to a panel of three arbitrators;
 11. the claimants had requested that the arbitrators award $3,000,000 under the insurance policies, the maximum amount to which the claimants believed they were entitled under the policies;
 12. the arbitrators held two hearings at which the parties were afforded an opportunity to introduce evidence. (Copies of the transcripts of these hearings have been included in the record);
 13. on November 1, 1989, the arbitrators rendered a written decision pursuant to the arbitration agreement. (A copy of this decision is included in the record);
14. the arbitrators awarded the claimants a total of:
 a) $1,700,000 to the Estate of Sara Mass; b) $50,000 to Daniel Mass; c) $50,000 to Jessica Mass;
15. the arbitrators credited U.S.F. G. as follows:
 a) $36,666.67 against the award of the Estate of Sara Mass; b) $3,866.42 against the award of Daniel Mass; c) $2,500.00 against the award of Jessica Mass;
 these credits are the proper credits against each claimant's award;
16. on or about November 15, 1989, U.S.F. G. CT Page 3730 disbursed $1,000,000 to the claimants;
 17. on November 21, 1989, U.S.F. G., through its attorney, filed a motion to vacate the arbitrators' award; and
 18. on November 30, 1989, the claimants filed a motion to vacate in part or to modify the arbitrators' award.
According to the record, the premium for the automobile liability policy covering the insureds' two automobiles was $1,000 which included collectively a premium of $54 for uninsured and underinsured motorist (UM) coverage. The premium for the personal excess policy was $173.
In its motion to vacate the arbitration award brought pursuant to Conn. Gen. Stat. section 52-418, U.S.F. G contends that its personal excess policy in the amount of $1,000,000 does not provide uninsured motorist coverage either by its terms or by application of Conn. Gen. Stat. section 38-175c. Therefore, U.S.F. G. maintains that the arbitrators' decision supporting coverage on this point is error as a matter of law.
Claimants Daniel Mass, Jessica Mass. and the Estate of Sara Mass. seek an order of this Court vacating and/or modifying the arbitrators' decision in two respects: 1) by increasing the damages found to be seven million dollars; and 2) by increasing the among of available uninsurance and underinsurance motorist coverage to $1.5 million on each of the Masses' two motor vehicles, and thereby producing $3 million in total stacked uninsured and underinsured motorist coverage.[1] In the latter respect the estate argues that the U.S.F. G. $1 million umbrella policy is an automobile liability policy within the meaning of Conn. Gen. Stat. section 38-175c.
The central issue regarding coverage in this matter is whether the personal excess policy issued by the U.S. Fidelity Guaranty Company provides liability insurance in such manner as to extend its $1 million excess occurrence limit to the UM coverage provided on a separate automobile liability insurance policy for the Masses' two automobiles. Both parties have submitted well-written briefs on this issue. Each party's brief contains a reference to the case of Cohn v. Pacific Employers Insurance Company, 213 Conn. 540
(1990).
The issue in Cohn, supra, was ". . . whether an `excess' CT Page 3731 or `umbrella' insurance policy provides coverage to third party claimants injured through the acts of uninsured or underinsured motorists." Id., at 540-541.
Answering the question in the negative the Connecticut Supreme Court found that neither Conn. Gen. Stat. section 38-175c[2] nor the particular language of the particular policy required such coverage. The analysis of the Court includes two striking points as supporting the absence of coverage: 1) the requirement in the excess policy that the insured be responsible for maintaining UM coverage; and 2) the lack of any agreement in the excess (indemnity) policy for such Excess insurer to provide UM coverage. Furthermore, the Supreme Court stated that
 [t]o the extent that there may be similarities in the environment of underlying automobile policies vis a vis excess blanket catastrophe liability policies, we conclude that the term automobile liability policy as referred to in section 38-175c includes only those policies that extend underlying coverage before the operation of any indemnity policy that might otherwise exist.
Id. at 547-548.
This Court concludes that the U.S.F. G. personal excess policy does not extend underlying UM coverage for two of the reasons set forth in Cohn, supra, namely, 1) the requirement in the personal excess policy that the insured be responsible for maintaining UM coverage; and 2) the lack of any agreement in the personal excess policy requiring the carrier to provide excess UM coverage.
Regarding the claim of the Masses for modification of the award to increase the amount of damages found, the Court is invited to exercise this function in accordance with Conn. Gen. Stat. section 52-419a(1) which authorizes the court, inter alia, to issue an order correcting an award ". . .[i]f there has been an evident material miscalculation of figures. . . ." The arbitrators awarded $1,700,000 to the estate of Sara Mass. for loss of enjoyment of life and her economic loss. According to the Masses this $1,700,000 figure is an evident miscalculation since the transcript of the arbitration discloses that the late Sara Mass' uncontroverted part-time lost earning capacity is in excess of $3,000,000 and her possible full-time loss earning capacity exceeds $5,000,000.
Although the destruction of Sara Mass' meaningful and creative life by a drunk driver is atrocious, neither a CT Page 3732 review of the award nor of the transcript of the arbitration discloses the $1,700,000 figure of the arbitrators as the evident miscalculation claimed. Furthermore, the Court has found no case authority which substantiates this aspect of the Masses' claim.
For the foregoing reasons, U.S.F. G.'s application to vacate the arbitrators' award is granted to the extent that the award incorporates the personal excess policy; and the application of the Masses to vacate the award in part or modify the award so as to increase the amount of UM coverage, and to increase the amount of damages is denied.
Clarance J. Jones Judge