Mayhew R. ISZARD, et al.

v.

**AMERICAN AUTOMOBILE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued March 19, 1992.

Decided May 15, 1992.

Charles E. Gilbert, III (orally), Gilbert Law Offices, Bangor, for plaintiffs.

William I. Garfinkel, Carmody & Torrance, Waterbury, Conn., Warren M. Silver, Bangor, amicus curiae.

Stephanie E. Lugg, Thomas E. Getchell (orally), Richardson & Troubh, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Chief Justice.

Plaintiffs Mayhew and Ann Iszard appeal from a summary judgment entered in Superior Court (Hancock County, *Smith, J.*) finding no coverage for their damages for personal injury and loss of consortium under an underinsured motorist policy issued by defendant. The central issue is whether the insurance policy provided by defendant to the lessor of the vehicle included underinsured coverage and if so, whether that coverage extended to the plaintiff-lessee as well. We find that the policy did not provide such coverage to the lessor in this case nor, consequently, to the lessee, and therefore we affirm the judgment.

Mayhew Iszard was seriously injured in an automobile accident on July 31, 1986, while driving a vehicle leased through his business proprietorship from VW Credit, Inc. In accordance with the lease agreement, plaintiff maintained an automobile liability policy protecting both lessor and lessee in the amount of $300,000. On the date of the accident, the lessor, VW Credit, Inc. (through Volkswagen of America, both hereinafter "VW"), was also insured by defendant under a "primary contingent and excess liability" policy in the maximum amount of $2,000,000 per occurrence. Plaintiff subsequently settled his underinsured motorist claim against his own insurance company, assigning to it his subrogation rights against the other driver (who was insured for $100,000).

The plaintiffs brought this action seeking recovery for their injuries under the VW policy issued by defendant. Although VW had not purchased such underinsured motorist coverage, Connecticut law[1] mandates that insurers writing automobile liability policies include uninsured/underinsured coverage equal to the limits of the liability coverage. Conn.Gen.Stat. § 38–175c (1987) (now § 38a–336). Plaintiffs contend that this coverage was therefore included in the VW policy by operation of the statute, and that as lessees of a covered vehicle they are "insureds" under the policy definition

and entitled to underinsured coverage up to $2,000,000.

We must first determine whether the lessor's policy is subject to Connecticut's mandatory uninsured motorist coverage law. Section 38–175c states in pertinent part:

> Every [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ....

> Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on or after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from liability imposed by law unless the insured requests in writing a lesser amount, but not less than [$20,000] ....

If the VW policy is an automobile liability policy, then section 38–175c creates underinsured motorist coverage. The Connecticut Supreme Court, however, has held that for the purposes of section 38–175c, only policies providing primary coverage, not excess or umbrella coverage, are "automobile liability policies." *Cohn v. Pacific Employers Ins. Co.*, 213 Conn. 540, 569 A.2d 544 (1990). The policy at issue in this case is clearly an excess policy. Endorsement B defines the vehicles covered by the policy as follows:

> *"Leased Auto"* mean[s] an *auto you* lease to a lessee for one year or more, under a lease agreement which requires the lessee to provide primary insurance for *you.*

Furthermore, endorsement B unambiguously states that the liability and statutory no-fault insurance (the only coverage purchased by VW) is subject to the following provision:

> The insurance provided by this endorsement is excess over any other collectible insurance, whether primary, excess or

---

1. Applicable to this case as the location where the leased vehicle was principally garaged.

contingent. *Part VII[I], paragraph B.1. Other Insurance, does not apply.*

(emphasis added). The excluded "Other Insurance" clause states, "For any covered auto you [VW] own this policy provides primary insurance." By expressly nullifying this language, the endorsement removes any doubt that the policy provides excess, not primary, coverage.

Plaintiffs attempt to distinguish *Cohn* from this case, arguing that the *Cohn* policy was an indemnity policy whereas the VW policy provides for direct payment to the insured. We find the principles of *Cohn* equally applicable to the VW policy. The goal of the statute, that of assuring certain minimum protections for all motorists, is met by applying section 38–175c to policies providing underlying coverage. *See Cohn*, 569 A.2d at 548; *Roy v. Centennial Ins. Co.*, 171 Conn. 463, 370 A.2d 1011 (1976). Plaintiffs' argument that the policy is a primary automobile liability policy and subject to the statute rests entirely on the form language used in the policy referring to "business auto policy" and "liability" coverage. This argument ignores the effect of the endorsement. By the terms of both the policy and the lease agreements, plaintiffs' insurer provided the primary coverage and the excess VW policy therefore did not include underinsured coverage by virtue of section 38–175c.

The entry is:

Judgment affirmed.

All concurring.