## M. Chandra Sekharra Reddy, Administrator (Estate of Vijaya S. Reddy) v. New Hampshire Insurance Company (9808)

Foti, Norcott and Murray, Js.

Argued December 9, 1991—decision released June 16, 1992

*Philip F. Spillane,* for the appellant (plaintiff).

*Deborah L. Bradley,* with whom, on the brief, were *John W. Lemega* and *Daniel P. Scapellati,* for the appellee (defendant).

Murray, J. The sole issue presented in this appeal is whether the "umbrella" or "excess" insurance policy

issued by the New Hampshire Insurance Company (carrier) is required, under the mandatory provisions of General Statutes (Rev. to 1989) § 38-175c (now § 38a-336),[1] to provide uninsured and underinsured

[1] General Statutes (Rev. to 1989) § 38-175c (now § 38a-336) provides: "UNINSURED MOTORIST COVERAGE. (a) (1) Every [automobile liability insurance policy] shall provide insurance, herein called uninsured motorist coverage, in accordance with [the] regulations [adopted pursuant to section 38-175a], with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance poli-

motorist coverage to the plaintiff.[2] The trial court, in granting summary judgment in favor of the carrier, concluded that the umbrella policy in this case was not within the scope of § 38-175c, and was therefore not required to provide uninsured motorist coverage. We affirm that judgment.

I

The pertinent facts in this case are not disputed. M. Chandra Sekharra Reddy, the plaintiff, is the administrator of his deceased sixteen year old son's estate. The young man was killed in an automobile accident on June 29, 1986. William Simonelli was the second automobile operator in this two vehicle accident and, pursuant to a settlement agreement, the estate collected $300,000 from Simonelli's automobile liability insurance carrier, thereby exhausting coverage under the only applicable liability policy.

Reddy then made a claim for underinsured motorist benefits under his own automobile liability insurance policy (underlying policy). Pursuant to an arbitration proceeding, he recovered $600,000, the full amount of coverage available under the underinsured motorist provision of that underlying policy.

Reddy thereafter made a claim for additional underinsured motorist benefits under his personal catastrophe

cies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[2] In this opinion, the term uninsured motorist encompasses the term underinsured motorist as well.

liability policy (umbrella policy). The umbrella policy provided automobile liability coverage in the amount of $1,000,000 in excess of the retained limit provided by the underlying policy, which was issued by the same carrier. This umbrella policy provided: "The company agrees to pay on behalf of the insured ultimate net loss in excess of the retained limit, subject to the limit of liability which the insured shall become legally obligated to pay as damages because of personal injury or property damage." It also stated in its conditions section, with respect to payment of loss, that "[t]he insured may pay the amount of ultimate net loss to the claimant to effect settlement and upon submission of due proof thereof, the company shall indemnify the insured for that part of such payment which is in excess of the retained limit, or the company will, upon request of the insured, make such payment to the claimant on behalf of the insured." This policy, commonly known as an excess or umbrella policy, specifically excluded uninsured motorist coverage.[3] In addition, the umbrella policy also specified that any section of the policy in conflict with the Connecticut General Statutes at the time of the policy's effective date is automatically amended to conform to the mandates of such statutes.[4]

When the carrier denied coverage under the umbrella policy, Reddy commenced this action to recover underinsured motorist benefits. Reddy alleged that the umbrella policy is an automobile liability insurance policy under § 38-175c, and, therefore, the carrier,

---

[3] The umbrella policy stated, under the exclusions section: "This policy does not apply with respect to . . . any claim for Uninsured/Underinsured Motorists Coverage(s) or No-Fault benefits as defined in any primary policy described on Part B – Declarations."

[4] The umbrella policy provided: "Conformity with State Statutes. Any provision of this policy which, on its effective date, is in conflict with the statutes of the state in which the named insured maintains his principal residence on such date is hereby amended to conform to the requirements of such statutes."

he complained, is required to provide underinsured motorist coverage to Reddy pursuant to § 38-175c, in conjunction with the conformity to state law provision of the umbrella policy. Reddy also alleged that such coverage is required despite the contrary exclusion provision in this policy. The carrier denied that the umbrella policy was an automobile liability insurance policy for purposes of § 38-175c, and also responded by way of special defense that the policy itself expressly excludes uninsured motorist coverage. After Reddy denied the special defense, both parties moved for summary judgment. On December 7, 1990, the trial court granted summary judgment in favor of the carrier. It ruled that the umbrella policy was not within the scope of § 38-175c. This appeal followed.

## II

General Statutes (Rev. to 1989) § 38-175c (now § 38a-336) contains this state's mandatory uninsured motorist coverage provisions. It requires every automobile liability insurance policy to provide uninsured motorist coverage in accordance with the regulations adopted pursuant to § 38-175a (now § 38a-334). General Statutes (Rev. to 1989) § 38-175c (a) (1). Originally, this section required uninsured motorist coverage in minimum limits, and there was no provision for underinsured, as opposed to uninsured, motorist coverage.

In 1979, however, the statute was amended by No. 79-235 of the 1979 Public Acts to require underinsured motorist coverage. General Statutes § 38-175c (a) (1). "The purpose of this amendment was to remedy the 'anomalous situation' which was noted in *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 475, 370 A.2d 1011 (1976), and *Simonette* v. *Great American Ins. Co.*, 165 Conn. 466, 471, 338 A.2d 453 (1973), where an injured

party could find himself in a better position if the tort-feasor had no liability insurance than if he had only the statutory minimum amount." *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 390–91, 446 A.2d 1059 (1982). The statute was further amended by No. 461 of the 1983 Public Acts to require every automobile liability insurance policy issued or renewed on and after July 1, 1984, to provide uninsured motorist coverage "with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount." General Statutes § 38-175c (a) (2). The purpose of this amendment was to permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party unless and until the insured had requested in writing to have the insurance policy provide a lesser amount of uninsured motorist coverage. *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 631, 569 A.2d 1105 (1990).

Pursuant to § 38-175a, the insurance commissioner has adopted regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering, inter alia, private passenger motor vehicles.[5] Specifically, the commissioner adopted § 38-175a-4 of the Regulations of Connecticut State Agencies. It provides: "These regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of § 14-112 of the general statutes and, where applicable, § 38-320 of the general statutes or (2) if the policy contains an underlying insurance requirement or provides for a retained limit of self

---

[5] The plaintiff's decedent was riding in a private passenger automobile at the time of his death.

insurance equal to or greater than the limits specified in said subsection (a) of § 14-112, and, where applicable, § 38-320."

The term "automobile liability insurance policy" is not defined in our statutes or regulations. Our Supreme Court, in *Cohn* v. *Pacific Employers Ins. Co.*, 213 Conn. 540, 569 A.2d 544 (1990), was presented with an issue similar to the one here, namely, whether an excess or umbrella insurance policy must provide uninsured motorist coverage. The *Cohn* court held that the umbrella policy there was not required to provide uninsured motorist coverage to the plaintiff. Id., 547–48. The court reasoned that the defendant's umbrella policy was an indemnity policy, not a liability policy. The court distinguished the two as follows: " 'Whether an insurance contract is a liability policy or an indemnity policy depends upon the intention of the parties, as evidenced by the phraseology of their agreement . . . . The chief difference between a liability policy and an indemnity policy is that under the former a cause of action accrues when the liability attaches, while under the latter there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured.' 6A J. Appleman, Insurance § 4261, and see cases cited therein." *Cohn* v. *Pacific Employers Ins. Co.*, supra, 546–47. The *Cohn* court then concluded that the term "automobile liability insurance policy" as referenced in § 38-175c of our statutes "includes only those policies that extend underlying coverage before the operation of any indemnity policy that might otherwise exist." Id., 547–48.

## III

Reddy argues that his umbrella policy is a liability, not an indemnity, policy. Thus, he contends, *Cohn* requires his umbrella policy to provide uninsured motorist coverage. We note, however, that the *Cohn* court's

holding was limited to the fact that excess indemnity policies are not subject to the requirements of § 38-175c. Additionally, *Cohn* did not address the precise issue presented to us by Reddy, namely, whether the provisions of § 38-175c require his excess "liability" policy, which has an underlying insurance requirement, to provide uninsured motorist coverage.

The trial court, in its memorandum of decision, rejected Reddy's argument that *Cohn* necessarily holds all excess nonindemnity policies to the requirements of § 38-175c, and concluded, on the basis of *Cohn* and case law from other jurisdictions cited with approval in *Cohn*, that this umbrella policy was not within the scope of § 38-175c.[6] It further concluded that because the umbrella policy expressly excluded uninsured motorist coverage the carrier was not obligated to provide such coverage to Reddy. The trial court based its decision on the distinction between primary and excess liability policies, and decided, consistent with the case law from other jurisdictions, that excess or umbrella

---

[6] See *O'Hanlon* v. *Hartford Accident & Indemnity Co.*, 639 F.2d 1019, 1027 (3d Cir. 1981) (Delaware mandatory uninsured motorist statute does not apply to excess liability insurance policies); *Trinity Universal Ins. Co.*, v. *Metzger*, 360 So. 2d 960, 962 (Ala. 1978) (excess liability policy not within the scope of Alabama's mandatory uninsured motorist statute); *Hartbarger* v. *Country Mutual Ins. Co.*, 107 Ill. App. 3d 391, 396, 437 N.E.2d 691 (1982) (excess liability policy limited to excess liability coverage, which does not include uninsured motorist coverage); *Matarasso* v. *Continental Casualty Co.*, 82 App. Div. 2d 861, 862, 440 N.Y.S.2d 40 (1981), aff'd, 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982) (New York uninsured motorist statute applied to claimant's underlying policy only, and not to an excess liability policy); *Moser* v. *Liberty Mutual Ins. Co.*, 731 P.2d 406, 410 n.16 (Okla. 1986) (purpose of excess liability policy is at most tangentially related to automobile liability, and thus not subject to Oklahoma's mandatory uninsured motorist statute); *Thompson* v. *Grange Ins. Assn.*, 34 Wash. App. 151, 156–57, 660 P.2d 307 (1983) (excess liability policy really a continuation of the primary policies and thus did not need to supply any uninsured motorist coverage under Washington's mandatory statute). These cases were also cited with approval in *Cohn* v. *Pacific Employers Ins. Co.*, 213 Conn. 540, 548, 569 A.2d 544 (1990).

insurance policies like this umbrella policy, whether they are indemnity or liability policies, are not within the scope of § 38-175c, and thus are not required to provide uninsured motorist coverage.

## IV

We agree with the trial court that the distinction between primary and excess insurance policies is the key to determining whether a policy is an automobile liability insurance policy and thus is required to provide uninsured motorist coverage pursuant to § 38-175c.[7] Although our Supreme Court in *Cohn* focused on the distinction between liability and indemnity policies, General Statutes (Rev. to 1989) § 38-175 (now § 38a-321),[8] which was not discussed in *Cohn,*

---

[7] "Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile and homeowner's policies have liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five million, or ten million. It may assume as a primary carrier certain coverages not included elsewhere, such as invasion of privacy, false arrest etc., but there is no intention to supplant the basic carriers on the homeowners or automobile coverages. Therefore, these should not even enter into our current consideration.

"However, because of the misunderstanding of the courts as to the nature of such coverages, they have been held to fall within the definition of automobile liability insurance. . . . It should be recognized that the generosity of the courts confers no favor upon the insuring public. Such decisions result either in such coverage being withdrawn from potential insureds or in premium rates being raised so substantially that they will become priced out of the range of most buyers. For every such extension there is a price to be paid." 8C J. Appleman, Insurance Law and Practice § 5071.65, pp. 107–108.

[8] General Statutes (Rev. to 1989) § 38-175 provides: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such

blurs such a distinction by depriving an insurance carrier of the protection from liability usually afforded by an indemnity policy. Additionally, notwithstanding the approach taken by the trial court in reaching its conclusion, we think that the express language of § 38-175a-4 of the Regulations of Connecticut State Agencies, which was not presented to the trial court, makes clear that policies that contain underlying insurance requirements are excluded from the mandatory provisions of § 38-175c.

Also known as the direct action statute, the purpose of § 38-175 is to "remedy [t]he unfairness to the assured of contracts of insurance with provisions that the insurer should be liable only in cases where the assured had actually paid a judgment obtained against him. . . ." (Internal quotation marks omitted.) *Brown* v. *Employer's Reinsurance Corporation*, 206 Conn. 668, 672, 539 A.2d 138 (1988). In other words, where a plaintiff obtains a judgment in its favor against an insured tortfeasor and the tortfeasor does not satisfy the judgment within thirty days therefrom, the plaintiff is subrogated to the rights of the tortfeasor as against the insurer to the same extent as if the insured had satisfied the judgment. Thus, the plaintiff is permitted by law to proceed directly against such insurer whether the policy at issue is one of indemnity or lia-

casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

bility. This statute, then, obscures the distinction between indemnity and liability policies as set forth in *Cohn*, because even an insurer that issues an indemnity policy is not shielded from an obligation to pay a party merely because the insured has not paid the judgment. Thus, we think that § 38-175 is relevant to the resolution of the issue before us. `

Our analysis in determining whether Reddy's umbrella policy is an automobile liability policy, therefore, is based on determining whether the insurance policy is a primary policy, which provides underlying coverage, or an excess policy with an underlying insurance requirement. Such a determination is supported in Connecticut by § 38-175a-4 of the Regulations of Connecticut State Agencies,[9] which interprets § 38-175c to exclude from the mandatory uninsured motorist coverage requirements of that statute any insurance policy that "contains an underlying insurance requirement." Here, the umbrella policy contained an "underlying insurance requirement," which required exhaustion of the underlying policy's coverage. By operation of § 38-175a-4 of the regulations, which has the effect of law in this state; see *Travelers Ins. Co.* v. *Kulla,* 216 Conn. 390, 399, 579 A.2d 525 (1990); the umbrella policy is not required to provide uninsured motorist coverage. Furthermore, because the language of the policy expressly excludes uninsured motorist coverage, there is no other basis on which we can conclude that the carrier must provide uninsured motorist coverage to Reddy under the umbrella policy.[10]

---

[9] Section 38-175a-4 of the Regulations of Connecticut State Agencies provides: "These regulations do not apply to the insurance afforded under any policy: (1) to the extent that the insurance afforded exceeds the limits specified in subsection (a) of § 14-112 of the general statutes and, where applicable, § 38-320 of the general statutes, or (2) if the policy contains an underlying insurance requirement or provides for a retained limit of self-insurance equal to or greater than the limits specified in said subsection (a) of § 14-112 and, where applicable, § 38-320."

[10] We note that there is nothing in our statutes or regulations that would prohibit an insurer from offering to an insured uninsured motorist cover-

The trial court was not presented with the effect of the Connecticut Insurance Commissioner's Regulation § 38-175a-4 on this umbrella policy.[11] The relationship of that regulation to this umbrella policy appeared in these proceedings for the first time before us. We think, however, that the regulation makes clear that § 38-175c is not applicable to policies with underlying insurance requirements. Although we base our decision on grounds different from the trial court, we affirm the judgment because the result is required by law. *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980); *Cummings & Lockwood* v. *Gray,* 26 Conn. App. 293, 299, 600 A.2d 1040 (1991).

## V

Reddy argues that § 38-175a-4 of the regulations does not apply because it has been implicitly repealed by subsequent statutory enactments by the legislature. Specifically, he argues that § 38-175a-4 (2) of the regulations is inconsistent with General Statutes § 38-175c (a) (2) insofar as the regulation permits minimal amounts of uninsured motorist coverage. Reddy suggests that § 38-175c (a) (2) requires parity between liability and uninsured motorist coverages in all automobile liability insurance policies. We disagree.

"[A]n administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute. . . . A person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. . . . The insurance commissioner has a

---

age in an excess insurance policy. An insured is entitled to that coverage in an excess policy, however, only when the insurance agreement expressly provides it.

[11] We also note that it appears from the record in *Cohn* that that court was not presented with the question of the effect of § 38-175a-4.

'very broad grant of regulatory authority' in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to 'great deference.' " (Citations omitted.) *Travelers Ins. Co.* v. *Kulla,* supra. "Therefore, the rule disfavoring the implied repeal of a statute by the subsequent enactment of another statute also applies to the implied repeal of a regulation by statute, especially where, as in the present case, the regulation at issue has been approved by the legislative regulation review committee." *Dugas* v. *Lumbermens Mutual Casualty Co.,* 217 Conn. 631, 641, 587 A.2d 415 (1991). "[W]e presume that [the regulation is] 'an accurate reflection of the legislative intent in the statute's more general language.' *AFSCME* v. *New Britain,* 206 Conn. 465, 470, 538 A.2d 1022 (1988)." *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 211, 603 A.2d 385 (1992). "The regulations, however, must carry into effect the purpose and intent of the statute pursuant to which they are enacted." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 196, 530 A.2d 171 (1987).

Reddy suggests that certain amendments to General Statutes § 38-175c implicitly repealed § 38-175a-4 of the regulations, which became effective February 1, 1975. As was previously discussed, in 1975 § 38-175c required no provision for underinsured motorist coverage, and did not permit the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party himself. Reddy argues that the regulation is no longer consistent with the provisions of the statute, which now provides for both, because the regulation requires only minimal limits of uninsured motorist coverage, which, according to Reddy, the statutes no longer permit. Additionally, the plaintiff argues that the regulation is not consistent with public policy, which he says requires parity between liability and uninsured motorist coverages in automobile liability insurance policies.

Reddy correctly states that § 38-175a-4 became effective in 1975. It has not been modified in any way since that time. "The fact that the insurance commissioner has never proposed an amendment to the regulation . . . especially in 1986 when other provisions of the regulation [involving uninsured motorist coverage] were amended, is an indication that the commissioner does not share the view of the [plaintiff] that the regulation was repealed by implication in [1979 or 1983]." *Dugas* v. *Lumbermens Mutual Casualty Co.*, supra, 643. Additionally, § 38-175a-2 of the regulations, as amended in 1986, provides in pertinent part: "All references in these regulations [§§ 38-175a-1 to 38-175a-8 inclusive,] to sections of the general statutes of Connecticut shall mean and include the statutory provision in effect on the date these regulations become effective *and as statutory provision may be thereafter amended from time to time.*" (Emphasis added.) Moreover, § 38-175a-9 of the regulations, which took effect on June 1, 1986, provides: "Sections 38-175a-1 to 38-175a-8, inclusive, shall take effect as amended on June 1, 1986." The language of these two regulations indicates that the insurance commissioner and the legislative regulation review committee reviewed and approved all of the regulations, including § 38-175a-4, in 1986.[12]

"If a regulation has been in existence for a substantial period of time and the legislature has not sought to override the regulation, this fact, although not determinative, provides persuasive evidence of the continued validity of the regulation. . . . The approval of revi-

---

[12] The amendments to the regulation approved in 1986 did not directly affect the regulation at issue in this case. "The action taken by the legislative regulation review committee in 1986, however, is still pertinent because it provides evidence on whether the committee found the amended regulation[s] to be consistent with the overall statutory scheme that the regulation[s] seek to implement." *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 642 n.12, 587 A.2d 415 (1991).

sions to [the regulations contained in § 38-175a] by the legislative regulation review committee in 1986 provides additional support for the defendant's contention that the regulation was not repealed by implication [by any amendment to the statue prior thereto]. . . . 'The fact that the commissioner's regulation has been approved by the standing legislative regulation review committee, although not dispositive of the issue before us, is an *important consideration* in our determination of whether the commissioner's regulation comports with the legislative intent . . . .' " (Citations omitted; emphasis in original.) Id., 642–43; see also *General Accident Ins. Co.* v. *Wheeler,* supra, 211 (presumption in favor of accuracy of a regulation is underscored by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., which provides for legislative oversight through the legislative review committee prior to the approval of the regulations).[13]

Reddy fails to recognize that the requirement to which he refers in § 38-175c (a) (2) is not absolutely mandatory. The express language of the statute permits the insured to opt for a lesser amount of uninsured motorist coverage, but he may not opt for an amount that is less than the absolute mandatory minimal amounts permitted in General Statutes § 14-112. There-

---

[13] General Statutes § 4-170 provides in pertinent part: "(b) No adoption, amendment or repeal of any regulation . . . shall be effective until the original of the proposed regulation approved by the attorney general . . . ha[s] been submitted to the standing legislative regulation review committee . . . and the regulation has been approved by the committee . . . ."

Article II of our state constitution, as amended by article XVIII of the amendments, further supports this proposition. It provides in pertinent part: "The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

fore, § 38-175a-4 (2) of the regulations is not inconsistent with the purpose and effect of the general statutes.[14]

As in *Dugas,* we think that the legislature, the legislative regulation review committee, and the insurance commissioner do not share the plaintiff's view that the amendment of. § 38-175c in 1983 impliedly repealed § 38-175a-4. Section 38-175a-4 is not inconsistent with General Statutes § 38-175c (a) (2), which requires uninsured motorist coverage in amounts equal to the amount contained in the liability portion of the policy, unless the insured requests otherwise. Nothing in § 38-175c, even as amended, suggests that insurance policies with underlying insurance requirements are, or at anytime were, required to provide uninsured motorist coverage. The regulation also is not contrary to the purpose and intent of General Statutes § 38-175c. Such policies to which the statute applies are still required to provide more than the minimum amount of uninsured motorist protection unless and until the insured requests otherwise, subject only to the limitation that the uninsured motorist coverage not be less that the minimal amounts required in § 14-112. We are

[14] Even if we concluded that the regulation is inconsistent with the statute, or contrary to the statute's purpose and intent, we would not be required to imply that the regulation is repealed in full. Subsequent enactments of statutes are presumed to repeal earlier inconsistent statutes or regulations only to the extent necessary to remove the conflict. *Dugas* v. *Lumbermens Mutual Casualty Co.,* 217 Conn. 631, 641, 587 A.2d 415 (1991). If § 38-175a-4 is inconsistent with the statutes at all, it is only insofar as it requires minimal uninsured motorist coverage, whereas the statute now requires uninsured motorist coverage equal to the amount of direct liability coverage contained in the automobile liability insurance policy unless the insured requests otherwise. The possible conflict can be remedied, if necessary, by an implicit repeal of the regulation only to the extent that it permits less than the full uninsured motorist coverage now required by statute. Again, we find no evidence that any amendment to the statute since 1975, when the regulation was promulgated, in any way intended to require excess policies with underlying insurance requirements to provide uninsured motorist coverage.

of the opinion that the statutes and the regulations as they exist are an accurate reflection of the state's public policy with respect to uninsured motorist coverage.

Accordingly, we conclude that General Statutes § 38-175c does not require the umbrella policy to provide uninsured motorist coverage to Reddy's decedent, and because the umbrella policy by its own terms expressly excluded uninsured motorist coverage, summary judgment was properly granted in favor of the carrier.

The judgment is affirmed.

In this opinion the other judges concurred.