[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 110) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (# 112)
 I. Factual and Procedural History
On July 25, 1996, the plaintiff, Earl R. Bond, filed a one count amended complaint against the defendants, General Accident Insurance Company of America and Pennsylvania General Insurance Company, seeking to collect underinsured motorist benefits pursuant to his automobile liability policy with defendants.
On September 3, 1992, the plaintiff was involved in an auto accident while operating his own vehicle. The plaintiff alleges that while traveling in a northerly direction on Wyassup Road in North Stonington, Connecticut, and while making a left turn, his vehicle was struck by Michael Howell, who was then traveling in a southerly direction on the same road. Howell was the chief of the North Stonington Volunteer Fire Association and was responding to an emergency call on I-95. The plaintiff alleges that he sustained permanent injuries, including severe physical[1]
and mental pain. The plaintiff alleges that his medical bills are in excess of $250,000. In addition, the plaintiff alleges that he will not be able to participate in some of his former activities. The plaintiff further alleges that he has sustained financial loss as he will not be able to pursue his usual course of employment.
The plaintiff initiated a personal injury action in the superior court, judicial district of New London, which was entitled Bond v. North Stonington, Docket Number CT Page 10274 527681. Howell's insurance carrier, Metropolitan, settled with the plaintiff for its full liability policy limit of $100,000. Additionally, the town of North Stonington, which was a party to the action, and the town of North Stonington Volunteer Fire Company ("fire company"), which was not a party to the action, entered into a settlement with the plaintiff. Pursuant to a contractual obligation between the fire company and Howell, who was a volunteer fireman, CIGNA, the fire company's insurer, agreed to pay $1,000,000, the full amount of the fire company's primary policy. After arbitration between the town of North Stonington and the fire company, CIGNA, on behalf of the fire company, agreed to pay an additional $700,000 pursuant to its excess umbrella policy.[2]
The plaintiff filed the amended complaint in the present case against his own carriers, the defendants, claiming that "the injuries and losses [which he has] sustained are the legal responsibility of the defendants, pursuant to the terms of the contract of insurance and in accordance with Connecticut General Statutes Sections 38-175c and 38a-336." The plaintiff's policy with the defendants was in force at the time of the accident.[3] Said policy insured four vehicles and provided uninsured/underinsured coverage of $300,000 per vehicle. The total uninsured/underinsured coverage available under the plaintiff's policy with the defendants after intra-policy stacking, was $1,200,000.
By Amended Answer and Special Defenses, the defendants asserted, as a first amended special defense, that the plaintiff's injuries, losses or damages were the direct and proximate result of the plaintiff's own contributory negligence. The second amended special defense asserted that the amount of recovery by the plaintiff under the defendants' insurance policy was limited to uninsured/underinsured coverage for four vehicles in the amount of $300,000 each, minus appropriate set-offs and credits. The third amended special defense asserted that the tortfeasor's vehicle was not underinsured at the time of the accident and, therefore, underinsured motorist coverage was not available to the plaintiff. The fourth amended special defense asserted that the policies applicable to the tortfeasor's vehicle were not exhausted by the plaintiff; thus, any claim for underinsured motorist benefits was impermissible. The fifth amended special defense asserted that the plaintiff breached the insurance contract by failing to obtain the insurers' consent to settle, extinguishing any potential claim for underinsured CT Page 10275 motorist benefits under the contract.
On April 13, 1998, the plaintiff filed a motion for partial summary judgment on the defendants' second, third and fourth special defense and an accompanying memorandum of law. The defendants filed a timely memorandum in opposition. While this memorandum only addressed the plaintiff's motion for partial summary judgment as to the second special defense, it incorporated by reference the defendants' own motion for summary judgment (filed May 15, 1998) and its accompanying memorandum which addressed the plaintiff's motion for summary judgment as to the third and fourth special defenses.
On May 15, 1998, the defendants filed their amended motion for summary judgment and accompanying memorandum of law, as to the plaintiff's amended complaint, dated July 25, 1996. The defendants moved on the ground that no genuine issue of material fact exists and that they are therefore entitled to judgment on the amended complaint based on their amended third, fourth and fifth special defenses. On May 14, 1998, the plaintiff filed a timely opposition. The court heard oral argument on the motions on May 18, 1998, at which time all parties approved and had an opportunity to be fully heard.
 II. Motion for Summary Judgment, Legal Standard
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. . ." Thompson andPeck, Inc. v. Division Drywall, Inc., 241 Conn. 370, 374,696 A.2d 326 (1997). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . ." Home Ins. Co. v. Aetna Life andCasualty, 235 Conn. 185, 202, 663 A.2d 1001 (1995). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. . ." (Citations omitted; internal quotation marks omitted.) Id. "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents."Connecticut National Bank v. Great Neck Development Co.,215 Conn. 143, 148, 574 A.2d 1298 (1990). "Only evidence that would be CT Page 10276 admissible at trial may be used to support or oppose a motion for summary judgment." Home Ins. Co. v. Aetna Life Casualty Co., supra, 202-03. "Where there is no question of fact or law which remains to be answered . . . a motion for summary judgment should be granted. If the sole question is one of law, it [can] be properly determined on a motion for summary judgment." (Citations omitted.)Schlott v. Zaremski, 32 Conn. Sup. 567, 568-69,345 A.2d 588 (1975).
 III. Discussion A. Plaintiff's Motion for Partial Summary Judgment
The plaintiff moves "for partial summary judgment as to the second, third and fourth special defenses against the defendants."
"The decisions of the Connecticut Superior Court . . . are almost in unanimous agreement that a motion for summary judgment as to a special defense is improper. . . Such a motion is improper because Practice Book § 379 [now Practice Book (1998 Rev.) § 17-44] does not provide for summary judgment on special defenses." (Citations omitted.) Dubourg v.Osborn, Superior Court, judicial district of Litchfield, Docket No. 06570, (July 5, 1995, Pickett, J.).
Accordingly, this court finds that the plaintiff's motion for partial summary judgment as to the special defenses is procedurally improper and is, therefore, denied.
 B. Defendants' Motion for Summary Judgment
The defendants move for summary judgment on the ground that there is no genuine issue of material fact and they are entitled to judgment on the amended complaint as a matter of law based on their amended third, fourth and fifth special defenses.
The defendants argue that they are entitled to judgment on the amended complaint based on their amended third special defense because the tortfeasor was not underinsured. The defendants state that the tortfeasor was not underinsured at the time of the accident as the total underinsurance coverage available to the plaintiff ($1,200,000) did not exceed the total coverage available to the tortfeasor as an insured. The defendants argue that the tortfeasor was an insured not only CT Page 10277 under his own policy (total $100,000), but also under the fire company's policy (total $3,000,000) and under the town of North Stonington's policy (total $3,000,000). The defendants specify that the tortfeasor was an insured under the town of North Stonington policy as the town was under a mandatory obligation to provide liability insurance to its volunteer firemen, pursuant to General Statutes § 7-308.[4] The defendants imply that the town's mandatory obligation to provide coverage pursuant to General Statutes § 7-308 triggers underinsurance coverage pursuant to General Statutes § 38a-336. The defendants do not explain their assertion that the tortfeasor's insurance under the fire company policy triggers underinsurance coverage pursuant to General Statutes § 38a-336.
The plaintiff argues in opposition that he is entitled to summary judgment as to the third special defense because as a matter of law, the tortfeasor's vehicle was underinsured at the time of the accident. The plaintiff argues that pursuant to General Statutes § 38a-336 and established case law, only the policies of the owner or operator of the underinsured vehicle may be considered in determining whether the insured is entitled to underinsured coverage under his own policy.
The parties present the court with an issue of first impression: specifically, whether general liability policies which cover the tortfeasor as an insured are "applicable policies" within the meaning of General Statutes § 38a-336. As a threshold matter, uninsured/underinsured motorist coverage serves to "[compensate] an insured motorist for injuries caused by the negligence of another motorist who is either uninsured or underinsured. . . [It] fills the void where the insured and his family are not at fault, but are injured, and where the one inflicting the injury either is uninsured, underinsured or a hit and run driver where the identity and fact of insurance or non-insurance cannot be ascertained." Mazzaferro v. RLIInsurance Co., 50 F.3d 137, 139 (2d Cir. 1995). "The broad remedial purpose of the coverage is to protect and make whole an individual injured at the hands of an uninsured/underinsured motorist." American Universal Insurance Co. v.DelGreco, 205 Conn. 178, 195, 530 A.2d 171 (1987).
General Statutes § 38a-336 mandates that every automobile liability insurance policy shall provide uninsured and underinsured motorist coverage in accordance with the regulations adopted pursuant to § 38a-334 for the protection of an CT Page 10278 insured who is legally entitled to recover damages from the owners or operators of uninsured and underinsured vehicles. Section 38a-334-5 of the Regulations of Connecticut State Agencies provides that "an insurer shall undertake to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of a motor vehicle owned or long-term leased by the name insured." General Statutes § 38a-336
(b) defines when the insurer's obligation to pay under an underinsurance policy is triggered: "An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liabilitybonds or insurance policies applicable at the time of theaccident have been exhausted by payment of judgments or settlements . . ." (Emphasis added.) General Statutes §38a-336(e) defines as underinsured, a motor vehicle "with respect to which the sum of the limits of liability under allbodily injury liability bonds and insurance policies applicableat the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which the claim is made. . . "
While no Connecticut court has examined the precise question of whether coverage extended under general liability policies insuring a tortfeasor may be used in calculating whether that tortfeasor is underinsured for purposes of General Statutes §38a-336, courts, in seeking to carry out the purpose of the underinsurance statute, have at least implicitly determined that a party is entitled to its insured's underinsurance when the owner's or operator's automobile liability insurance is exhausted. In American Universal Insurance Co. v.DelGreco, supra, 205 Conn. 195, the issue was whether an insurer could reduce its liability for underinsured motorist coverage by amounts received by its insured as dram shop payments. In affirming that the insurer could not so reduce its liability, the court had occasion to evaluate the statutory provision at issue in the present case.
In American Universal Insurance Co., after his decedent was killed in an auto accident, the defendant administrator pursued claims against the tortfeasor driver and, pursuant to the Dram Shop Act,[5] against the restaurant which served alcohol to the intoxicated tortfeasor. Thereafter, CT Page 10279 the defendant administrator brought a claim for the underinsured motorist benefits provided by the automobile policy issued to its decedent by the plaintiff insurer. The insurer declined to pay its insured under a policy which provided $40,000 in underinsurance benefits, reasoning that it was not only entitled to set off the $20,000 paid by Allstate, the tortfeasor's insurer, but also was entitled to set off the $20,000 under the dram shop policy. In order to discern whether the dram shop payment could be set off against underinsurance benefits, the court sought to "ascertain the intent of the legislature by examining the language of the statute, its legislative history and the purpose it [was meant] to serve."American Universal Insurance Co. v. DelGreco, supra,205 Conn. 193. The court acknowledged that General Statutes § 38-175c (b)(1) (now § 38a-336 (2)(b)), which clearly defined that an insurer's duty to pay underinsurance is triggered when "all bodily injury liability bonds or insurance policies applicable . . . are exhausted," did not define what category of policy constituted an "applicable policy". Id., 194. The court observed, however, that § 38-175c(b)(2) (now § 38a-336
(e)) employed the same phrase to refer to the automobile liability policies exclusively: "an `underinsured motor vehicle' is a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurancepolicies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which the claim is made, . . ."Id. (Emphasis added.) The court concluded that it seemed "logical and rational" to construe the reference to "bodily injury liability bonds and insurance policies" in § 38-175c(b) (1) (now § 38a-336 (2)(b)) as referring to automobilepolicies. Id., 193.
The court also examined the remarks of Representative Silvio Mastrianni in House discussions of Public Acts 1979, No. 79-235, which amended the uninsured motorist statute to add coverage for underinsurance, and concluded that the legislature intended that underinsured motorist coverage be triggered when automobile liability coverage is exhausted. Representative Mastrianni explained that the bill required the "insurance company of an innocent driver to pay up to the full amount of the uninsured motorist coverage when the at fault driver's insurance
has been exhausted and a deficiency remains." (Emphasis added.) 22 H.R. Proc., Pt. 16, 1979 Sess., p. 5341. Accordingly, the court concluded that the plaintiff insurer could not set off monies which its insured received pursuant to a dram shop policy CT Page 10280 because "underinsured motorist coverage is triggered when the tortfeasor's automobile liability coverage is exhausted. A dram shop policy is not classified as automobile coverage. Rather, it is designed to cover risks arising out of the sale of intoxicating liquors." American Universal Insurance Co. v. DelGreco, supra,205 Conn. 195-96.
In Ciarelli v. Commercial Union Ins. Cos.,234 Conn. 807, 808, 663 A.2d 377 (1995), the issue presented was whether the plaintiff insured was required to exhaust the automobile liability policies of both the tortfeasor operator and the automobile owner before seeking underinsurance benefits from her own insurer. In concluding that both policies must be exhausted, the court implicitly found that both the owner's and the operator's automobile liability policies were "applicable policies" within the meaning of § 38a-336 (b): "Section38a-336 (b) establishes the exhaustion requirement for underinsured motorist coverage. This subsection provides that an insurance company is obligated to make payment to its insured `after the limits of liability under all bodily injury bonds
or insurance policies applicable at the time of the accident have been exhausted . . . The language of the statute clearly anticipates circumstances under which coverage by more than one liability policy will be available, and a case such as this, in which there is a policy covering the automobile . . . and a different [automobile] policy covering the liability of the operator is the paradigm that the statute contemplates." (Emphasis in original.) Id., 810-11.[6] See Travelers Ins,Co. v. Kulla, 216 Conn. 390, 398, 579 A.2d 525 (1990) (purpose of the underinsured coverage is to protect named insured and other additional insureds from inadequate compensation caused by an accident with an inadequately insured automobile).
Similarly, in Mass. v. United States Fidelity GuarantyCo., 222 Conn. 631, 649, 610 A.2d 1185 (1992), the Supreme Court affirmed the principle that an insured's personal excess liability policy which provided for liability and contained no provision for underinsured motorist coverage was not an automobile liability policy within the meaning of General Statutes § 38-175c (now § 38a-336). The insurer, therefore, was not required to provide uninsured motorist coverage. Id. The court reasoned that "excess or umbrella policies . . . serve a purpose distinct from that served by policies that exclusively cover liability from damages arising out of the ownership, maintenance or operation of an automobile." CT Page 10281Id., 640. "[Excess] insurance [is] designed solely to protect [the insured] from the infrequent occurrence of catastrophic judgments against [them]." (Internal quotation marks omitted.)Id. See also Reddy v. New Hampshire Ins. Co.,28 Conn. App. 145, 155, 612 A.2d 64 (1992) (under § 38-175a-4 now (38a-334-4) excess insurance policies are excluded from mandatory uninsured motorist coverage requirements as they "[contain] an underlying insurance requirement").
The plaintiff correctly argues that the tortfeasor is underinsured. Pursuant to statute and case law, only automobile liability bonds and policies constitute "bodily injury liability bonds or insurance policies applicable at the time of the accident." The tortfeasor's policy is an automobile liability policy. By contrast, the town of North Stonington's policy is a general liability policy as it provides coverage "on behalf of any paid or volunteer fireman of [a] municipality all sums [for] which [a] fireman becomes obligated to pay by reason of liability imposed upon such fireman by law for damages to personal property. . . ," citing General Statutes § 708. The fire company's policy is likewise a general liability policy. Neither of these policies is specifically an automobile liability policy; and thus, neither is subject to the legislative mandate of General Statutes § 38a-336 which provides that "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage. . ." Nor are they subject to provisions set forth by the insurance commission. General Statutes § 38a-334 (a) provides, "[t]he Insurance Commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies. . ." Connecticut Regulations § 38a-334-5
provides, "an insurer shall . . . pay [its insured's] . . . legally obligated . . . damages because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of a motor vehicle. . ."
Accordingly, the defendants' motion for summary judgment on the amended complaint based on their amended third special defense is denied because the tortfeasor is underinsured since his automobile liability policy limit ($100,000) is less than the total underinsurance available to the insured plaintiff ($1,200,000).
The defendants also argue that they are entitled to judgment on the amended complaint based on their amended fourth special CT Page 10282 defense because the tortfeasor's benefits were not exhausted as both the town of North Stonington's policy and the fire company's policy were available to the tortfeasor. The plaintiff argues in opposition that he is entitled to summary judgment as to the fourth amended special defense because as a matter of law, the tortfeasor's benefits were exhausted.
This court finds that since the tortfeasor's policy is the only applicable policy for purposes of determining whether the tortfeasor was underinsured, payment by the tortfeasor of the total benefits available under the policy constitutes exhaustion pursuant to General Statutes § 38a-336 (b) and triggers the defendant insurer's duty to pay underinsurance benefits to its insured, the plaintiff.
Accordingly, the defendants' motion for summary judgment as to its fourth special defense is therefore denied.
Finally, the defendants argue that they are entitled to judgment on the amended complaint based on their amended fifth special defense because the plaintiff, in reaching a settlement agreement with the tortfeasor, the fire company, and the town of North Stonington without the defendants' consent, breached the insurance contract by violating the consent to settle provision. The defendants reason that the plaintiff had three choices, any one of which would have been in compliance with the insurance contract: (1) he could have initiated suit against all of the potential parties, including the defendant-underinsurance carriers; (2) he could have proceeded to a verdict and obtained a judgment if he thought that the value of his case exceeded the $1.8 million settlement offer; or (3) he could have requested the defendants' consent to settle.
The plaintiff argues in opposition that his failure to obtain the defendants' consent to settle is not a bar to the plaintiff's right to collect underinsurance benefits under the contract because the defendants waived such claim by failing to raise it as a special defense pursuant to Practice Book § 164, now Practice Book (1998 Rev.) § 10-50. In addition, the plaintiff argues that Connecticut trial court cases are split on the issue of whether an insured's breach of a consent to settle provision invalidates that insured's rights under the contract. Finally, the plaintiff argues that proposed Public Act 97-58(4), which declares that the insurer no longer has subrogation rights against the owner or operator of an underinsured vehicle for CT Page 10283 benefits paid by the insurer, effectively invalidates the consent to settle provision.[7]
The validity under Connecticut law of consent to settle clauses in underinsured motorist policies has not been addressed by the Appellate Court. There is a split of authority among the superior courts that have considered the issue. One superior court, in the most comprehensive decision on the issue to date,Bertz v. Horace Mann Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 115842, 14 CONN. L. RPTR. 523 (June 19, 1995, Flynn, J.), denied a plaintiff insured's motion to strike a special defense based upon a violation of a consent to settle clause where the insured had settled for the full amount of the tortfeasor's liability policy. The court declared that whether the defendant insurer would be able to ultimately prove and prevail upon its special defense was a matter that could not be decided as a matter of law on a motion to strike.
In denying the motion to strike, however, the court sought to investigate "the interplay between [the] rights and obligations of the insured, the insurer, the underinsured tortfeasor and the tortfeasor's insurer with respect to the underinsured motorist claim." Id., 524. It cited with approval the following discussion employed by the court in Longworth v. Van Houten,223 N.J. Super. 174, 538 A.2d 419, 419 (1988):
 Obviously, the victim may recover from the [underinsured or uninsured] tortfeasor only by judgment or settlement. Obtaining judgment requires the institution of litigation with all its inevitably attendant delay and expense. It would thus ordinarily be in the best interests of a victim whose damages exceed the tortfeasor's coverage to settle as expeditiously as possible with the tortfeasor's insurer for or close to the policy limits and then promptly resort to his own UIM coverage. But as a practical matter, the victim can only settle with the underinsured tortfeasor by giving him a general release. This is so since the tortfeasor's insurer, which controls settlement negotiations and any litigation against the tortfeasor as well as the pocketbook (up to the policy limits), owes a duty to its own insured, the tortfeasor, to provide him with the protection of a general release by the victim extinguishing the UIM carrier's right of subrogation against the tortfeasor, that right being no greater than the victim's own remaining right against the tortfeasor. . . Thus, the sole function of the consent
CT Page 10284 to settle clause is the preservation of the subrogation right. Consequently, the victim cannot simultaneously give a release to the tortfeasor and protect his UIM insurer's right of subrogation. If he gives a release, he will have extinguished his UIM carrier's right of subrogation, an act which, under the policy, affords the carrier grounds for disclaiming its UIM liability. If he will not give a release, he cannot settle with the tortfeasor and, consequently, he will be able to seek recovery under his UIM endorsement only if he proceeds to judgment against the tortfeasor, incurring the expense and delay of litigation, even where the tortfeasor's carrier is willing to accept the policy limits.
(Emphasis added.) Bertz v. Horace Mann Ins. Co., supra, Docket No. 115842.
The Bertz court went on the conclude that the value of the consent to settle clause was not merely to "exhaust the limits of a tortfeasor's policy, but rather [was] . . . to ensure that the insured [would] not settle a claim against the tortfeasor for the amount of the tortfeasor's policy — thus giving a full release and extinguishing any right of subrogation — when the tortfeasor has substantial assets or may later acquire assets from which the insurer would be able to satisfy any judgment above the tortfeasor's policy limit obtained by the insured." Id. The court went on to conclude that "this was not to say that an insurer [could] withhold its consent to settlement when it is not prejudiced by the insured's settlement with the tortfeasor, or similarly when the refusal to consent to settlement would violate the obligation of good-faith and fair dealing imposed on the parties to an automobile insurance contract." Id. See also Hudak v. Safeco Ins. Co, Superior Court, judicial district of Waterbury, Docket No. 101731 5 CONN. L. RPTR. 293 (November 22, 1991, Blue, J.) (denying a motion to strike a special defense based on a violation of a consent to settlement clause where "[the] plaintiff in his motion [gave] no reason why this contractual obligation should not be binding, assuming that it exists); General Accident Ins.Co. of America v. Taplis, 493 So.2d 32, 33 (Fla.App. 1986) (insurer prejudiced by insured's failure to obtain consent to settle against healthy 23 year old male tortfeasor with $32,000 annual salary and unrestricted future earning capacity; probability was that he would have assets in the future with which insurer could satisfy a judgment against him, thus recouping underinsured CT Page 10285 benefits paid to insured).
The court in Connor v. State Farm Mutual, Superior Court, judicial district of New Haven, Docket No. 327003, 8 CONN. L. RPTR. 35 (December 9, 1992, O'Keefe, J.), however, granted the plaintiff insured's motion to strike a defense based on a violation of a consent to settlement clause. The court reasoned that a consent to settle provision was not violated when "all the other applicable insurance coverage [was] exhausted. [In such a situation,] the defendant could not conceivably have any grounds to withhold [its] consent to a settlement for the limits of the policy. The contract provision of the policy does not apply to these circumstances and the evils it [was] designed to prevent are not a possibility in this case. The lack of consent to a settlement for the policy limits does not prejudice the defendant and in this case is not a valid defense to the plaintiff's claims." See also Pinto v. Norfolk Dedham MutualFire Ins. Co., Superior Court, judicial district of Waterbury, Docket No. 111294, (February 23, 1993) (Sylvester, J.) (8 CONN. L. RPTR. 397, 8 C.S.C.R. 457, 458).
This court finds that the defendants' consent to settle provision is invalid because (1) the superior courts are in agreement that the consent to settle clause in an insurance contract protects the insurer's right to subrogation; (2) Public Act 97-58(4), which declares that an insurer has no subrogation right against the owner or operator of an underinsured vehicle, effectively invalidates the consent to settle provision; (3) said public act affects the present claim, (original complaint) filed June 12, 1996, because it was pending on or brought after March 19, 1996; and (4) the defendants' consent to settle provision is invalid.
Accordingly, the defendants' motion for summary judgment as to its amended fifth special defense is therefore denied.
 IV. Conclusion
Accordingly, the plaintiff's motion for summary judgment as to the defendants' second special defense is denied because it is procedurally improper to move for summary judgment on a special defense. The defendants' motion for summary judgment on the amended complaint based on their third special defense is denied because as a matter of law, the tortfeasor was underinsured at the time of the accident. The defendants' motion for summary CT Page 10286 judgment on the amended complaint based on their fourth special defense is denied because as a matter of law, the tortfeasor's benefits were exhausted. The defendants' motion for summary judgment on the amended complaint based on their fifth special defense is denied because as a matter of law the consent to settlement provision is invalid.
Handy, J.