**Randall L. SCHMITT, Plaintiff–Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 98–1271.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1998.

Decided Dec. 3, 1998.

Daniel J. Tuley, Michael R. Cochren (argued), Evansville, IN, for Randall L. Schmitt.

Jeffrey A. Doty (argued), Brent Weil, Kightlinger & Gray, Evansville, IN, for American Family Mutual Ins. Co.

Before EASTERBROOK, RIPPLE, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Indiana requires the underwriter of any "motor vehicle liability policy" to provide coverage for accidents caused by uninsured or underinsured motorists, unless the insured declines that coverage in writing. IC § 27-7-5-2. Randall Schmitt purchased two policies that provide indemnity for auto accidents. The primary policy included $100,000 of uninsured or underinsured motorist coverage. The secondary policy—an umbrella policy for all accidents (auto, home, and other) that expose Schmitt to liability—had a limit of $1 million but did not cover uninsured or underinsured motorists (because they do not expose the insured *to* liability), nor did Schmitt execute a waiver of this coverage in connection with the umbrella policy. After a collision between his Porsche and another car, Schmitt collected $125,000 from other parties' insurance, which meant that the tortfeasor was not "underinsured" as Schmitt's primary policy defined that term. Schmitt then turned to American Family Mutual Insurance Co., the issuer of the umbrella policy, and demanded indemnity for losses exceeding the $125,000. American Family replied that the umbrella policy does not include underinsured-motorist coverage—to which Schmitt rejoined that the policy does so automatically in the absence of

a waiver. In this suit under the diversity jurisdiction, the controlling question is whether Indiana treats an umbrella policy as a "motor vehicle liability policy". The district court held that it does not and entered summary judgment for American Family.

It is linguistically possible to call the policy a "motor vehicle liability policy", because it affords coverage for liability arising from the operation of a motor vehicle. But it is not linguistically *obligatory* to apply that label; a secondary (or excess) policy that covers other things could as naturally be called "homeowners' insurance" or "liability insurance" or just an "umbrella policy." The umbrella policy required Schmitt to carry at least $300,000 in auto liability insurance and $300,000 in homeowners' insurance; it was secondary to both of these policies. To set up "motor vehicle insurance" as a discrete category is to imply that the policy has a single, or at least a primary, insured risk, which the umbrella policy did not. Unlike a standard auto insurance policy, it was not linked to a particular car, did not cover losses to (or theft of) the car or include other first-party insurance, and covered many risks in addition to those of driving.

If the function of IC § 27–7–5–2, when coupled with Indiana's requirement that all drivers have insurance, is to make sure that every driver has the option to secure under-insured-motorist coverage, then there is no need to treat an excess policy as a "motor vehicle liability policy". Every driver gets the option with the primary policy, just as Schmitt did. If he had been willing to pay for more than $100,000 of underinsured motorist coverage, he could have obtained that coverage as part of his primary policy. What sense would it make for a state to require two express elections when one serves the same purpose? Large numbers of states that have statutes similar to IC § 27–7–5–2 have concluded that excess policies do not automatically include uninsured or underinsured motorist coverage. Schmitt observes that Indiana's law differs from that of many other states by requiring the insurer to offer underinsured motorist coverage with limits equal to those of the primary liability coverage. Why this should affect the definition of "motor vehicle liability policy" is not clear, but suppose it does. Courts of seven states

with laws essentially identical to Indiana's have concluded that an umbrella policy need not include underinsured motorist coverage. *Popham v. State Farm Mutual Insurance Co.*, 333 Md. 136, 634 A.2d 28, 36 (Md.1993); *Stoumen v. Public Service Mutual Insurance Co.*, 834 F.Supp. 140, 143 (E.D.Pa.1993) (Pennsylvania law); *Reddy v. New Hampshire Insurance Co.*, 28 Conn.App. 145, 612 A.2d 64, 72 (Conn.App.1992); *Todd v. Federated Mutual Insurance Co.*, 305 S.C. 395, 409 S.E.2d 361, 365 (S.C.1991); *United Services Automobile Association v. Wilkinson*, 132 N.H. 439, 569 A.2d 749, 754 (N.H.1990); *MacKenzie v. Empire Insurance Cos.*, 113 Wash.2d 754, 782 P.2d 1063, 1065 (Wash. 1989); *O'Hanlon v. Hartford Accident & Indemnity Co.*, 639 F.2d 1019, 1027 (3d Cir. 1981) (Delaware law). Three additional states have achieved this outcome by statute after contrary judicial decisions. Ariz.Rev. Stat. § 20–259.01; Fla. Stat. § 627.727(2); Kan. Stat. § 40–284(a). Only three states have gone the other way. *Estate of Delmue v. Allstate Insurance Co.*, 113 Nev. 414, 936 P.2d 326, 328–29 (Nev.1997); *Cincinnati Insurance Co. v. Siemens*, 16 Ohio App.3d 129, 474 N.E.2d 655, 656–57 (Ohio App.1984); *Southern American Insurance Co. v. Dobson*, 441 So.2d 1185, 1190–91 (La.1983).

Indiana requires insurers to submit their policies for approval before sale. American Family submitted its umbrella policy; state officials approved it without requiring the company to add underinsured motorist coverage (or to obtain waivers of that coverage). It would unsettle legitimate expectations if insurers in Indiana discovered that they had underwritten coverage for which they had not collected premiums. Regulators in Indiana can't exempt insurers from the operation of state statutes, but they can construe ambiguous statutes—and Indiana courts, like their federal counterparts, defer to the way in which administrative officials interpret ambiguous statutes within their charge. *Sullivan v. Day*, 661 N.E.2d 848, 854 (Ind.App. 1996), affirmed in relevant part, 681 N.E.2d 713, 716 (Ind.1997); *Mance v. Public Employees' Retirement Fund*, 652 N.E.2d 532, 534 (Ind.App.1995); *Peabody Coal Co. v. Indiana Department of Natural Resources*, 629 N.E.2d 925, 930 (Ind.App.1994), affirmed, 664 N.E.2d 1171 (Ind.1996). The state's De-

partment of Insurance has never explained just why it believes umbrella policies to be outside the domain of IC § 27–7–5–2, but its Deputy Director informed the court by affidavit that its approval of policies such as American Family's was indeed based on an interpretation of that law. Indiana courts would give some weight to the fact that the Department has adhered to its understanding of the statute for many years, engendering substantial reliance interests.

Schmitt has not offered any plausible explanation why Indiana would compel multiple tiers of insurers to offer underinsured motorist coverage, when the statute's apparent aim is achieved by requiring such an offer from the primary insurer. By selecting the limits of liability insurance, drivers can obtain from the primary carrier as much underinsured-motorist coverage as they are willing to pay for. Excess insurers need not be encumbered by the administrative burden (and the occasional "gotcha!") of the offer-and-waiver approach; insureds will benefit from the ability to purchase additional coverage for the subjects of their choice, without the need to buy insurance products they do not value. Because IC § 27–7–5–2 does not define "motor vehicle liability policy", and because that term can be read without violence to the language as limited to primary policies of auto insurance, our best estimate is that Indiana would follow the majority of other states and treat secondary insurance policies as outside the ambit of IC § 27–7–5–2. Moreover, we agree with the district court that the issue need not be certified to the Supreme Court of Indiana. Intermediate appellate courts of that state have not produced conflicting decisions, and Schmitt, who commenced the suit in federal court, is poorly situated to ask for a second opinion. Unlike the products-liability issue in *Todd v. Societe BIC, S.A.*, 9 F.3d 1216 (7th Cir.1993) (en banc), the issue in this case arises often in state litigation, and the courts of Indiana will have ample opportunity to revisit the subject if our disposition is unsatisfactory.

AFFIRMED.