## KEVIN RILEY *v.* MELVIN PIERSON ET AL.*

Superior Court, Judicial District of Tolland
File No. CV-07-5002029-S

Memorandum filed October 26, 2009

*Keith Yagaloff,* for the plaintiff.

*Frank A. Leone,* for the defendants.

BRIGHT, J.

I

BACKGROUND

This action arises out of a promissory note (note) entered into between the plaintiff, Kevin Riley, as the

* Affirmed. *Riley* v. *Pierson,* 126 Conn. App. 486, 12 A.3d 581 (2011).

borrower, and the defendants, Melvin Pierson and Virginia Pierson, as the lenders. The note, in the amount of $326,000, was dated October 31, 1994. It was payable over twenty years at the rate of 7 percent per year. The note was secured by an open end mortgage deed (mortgage) on property owned by the plaintiff at 2665 Boston Turnpike, Coventry.

A dispute arose between the parties in May, 2007, when the plaintiff notified the defendants that he wished to prepay the note in full. The defendants disputed his right to do so and demanded additional consideration over and above the amount due on the note to accept the plaintiff's prepayment. Approximately two weeks of negotiations by faxed communications between the parties' attorneys ensued. Ultimately, the plaintiff paid the defendants more than was due on the note, and the defendants accepted the prepayment and released the mortgage.

Approximately four months after tendering payment and accepting the release of mortgage, the plaintiff brought this action. In his amended complaint, he claims that the defendants breached the terms of the note and accompanying mortgage by requiring the plaintiff to pay additional sums before they would accept his prepayment and release the mortgage. He also claims that the defendants, through their actions, have been unjustly enriched. Finally, the plaintiff makes a claim for quantum meruit. The plaintiff seeks the return of the sums he paid the defendants over and above the amount due on the note, as well as interest, fees and costs.

In addition to denying the allegations of the plaintiff's amended complaint, the defendants have asserted a number of special defenses, including accord and satisfaction, to all three counts of the plaintiff's complaint. The defendants have also asserted a counterclaim based

on the note and mortgage, seeking as damages the legal fees and costs they have incurred in defending against the plaintiff's action.

The plaintiff has generally denied the special defenses. He has also denied the allegations of the counterclaim and asserted numerous special defenses, which have been denied by the defendants.

Both parties have now moved for summary judgment. The defendants claim that the undisputed facts establish their special defense of accord and satisfaction. In particular, they claim that the parties, after extensive negotiations, came to an agreement in June, 2009, regarding the plaintiff's right to prepay the note. According to the defendants, the plaintiff, having agreed to a resolution of this issue at that time, is precluded from asserting his claims here.

The plaintiff claims that the undisputed facts show that there was no accord and satisfaction. He claims that those facts show that he never agreed to relinquish his rights to dispute the defendants' demand for a "prepayment penalty." Further, the plaintiff claims that he is entitled to summary judgment on the complaint because the undisputed facts show that the plain language of the mortgage required the defendants to accept the payment of the amount due on the note if tendered and to release the mortgage upon receipt of same. The plaintiff claims that the defendants' refusal to do so is a breach of the mortgage, entitling him to summary judgment.

## II

### SUMMARY JUDGMENT STANDARD

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the

absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 787, 967 A.2d 1 (2009). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995). Finally, "summary judgment [in favor of the defendant] is properly granted if [the defendant in its motion] raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985) (affirming grant of summary judgment based on special defense of workers' compensation being plaintiff's exclusive remedy).

## III

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants have moved for summary judgment based on their second special defense of accord and satisfaction. In support of their motion, the defendants have submitted the affidavit of attorney Leonard M. Horvath, the note and a set of requests for admissions dated April 24, 2009, that the defendants served on the plaintiff. The plaintiff never responded to the requests for admission. Thus, each request is deemed admitted. Practice Book § 13-23.

The evidence submitted by the defendants establishes the following facts. On October 31, 1994, the plaintiff and his spouse at the time, Denise Riley, signed the note, promising to pay the defendants the sum of $326,000 at an annual interest rate of 7 percent. The note was to be paid in monthly payments of $2527.47, with a maturity date of November 1, 2014. Paragraph 4 of the note specifically addressed the borrowers' right to prepay. That paragraph provides, in full: "This mortgage may not be prepaid, except in the case of death or any medical emergency regarding [the plaintiff], or in the case of financial hardship such as bankruptcy. A medical emergency shall be defined as any accident or illness preventing [the plaintiff] from earning a living with the same income as he currently is making this date, as verified by physicians.

"If any of these conditions occur, we will have six (6) months to elect prepayment. We will elect prepayment by sending written notice to the Lender. If we do not elect prepayment within six (6) months we forfeit the right to prepay without penalty with respect to that event of medical emergency or financial hardship.

"We will have the option of prepaying up to $10,000 of principal per year."

On May 24, 2007, the plaintiff's attorney, David A. Ruth, sent a letter to the defendants' attorney, Horvath, notifying the defendants of the plaintiff's election to prepay the note in full. Attorney Ruth requested a detailed payoff statement. He also stated: "I anticipate there will be a dispute over a claim for pre-payment penalty and it is our intention to pay any such penalty under protest, but we will pay the full amount demanded as long as there is a plausible claim for same." Exhibit 1 to Horvath affidavit.[1] On May 29, having

---

[1] All exhibit numbers throughout the remainder of this opinion reference exhibits to the Horvath affidavit.

not received a response from attorney Horvath, attorney Ruth sent a second fax, claiming that the plaintiff was "experiencing a very severe financial hardship." Exhibit 2. In particular, attorney Ruth pointed to the plaintiff's ongoing litigation with the state health department and the likely suspension of the plaintiff's license to operate a funeral home. The very next day, attorney Ruth sent another fax to attorney Horvath and Virginia Pierson, reiterating the plaintiff's financial hardship due to his dispute with the state over his funeral home license and also referencing the loss of his assets in his divorce. In that fax, attorney Ruth suggested a "negotiated settlement" regarding a possible prepayment penalty and represented that "[m]y client is willing to voluntarily pay a small penalty." Exhibit 4.

In response to attorney Ruth's requests, on May 30, attorney Horvath provided the requested payoff proposal. In that proposal, attorney Horvath first noted that the outstanding amount due on the note was $176,581.25. Attorney Horvath then calculated the investment loss and additional taxes the defendants claimed they would incur as a result of the prepayment. As a result of these calculations, the defendants requested a total payment of $217,445.17. Attorney Horvath noted that *"no payments will be accepted 'under protest.'"* (Emphasis in original.) Exhibit 5. Attorney Horvath also stated that "[n]o release will be provided unless and until payment is received with correspondence, signed by [the plaintiff], accepting the calculations as payment due from the mortgagors to the [defendants]." Id. Attorney Horvath also disputed the plaintiff's claim of a financial hardship.

On May 31, 2007, attorney Ruth countered with a proposed prepayment penalty of $20,000. Exhibit 6. He also disputed the defendants' calculations on interest. He also disagreed with attorney Horvath's interpretation of the prepayment provision of the note and argued

that "the financial hardship outcome could go either way." Id. Negotiations via fax continued throughout the day on May 31 between attorneys Ruth and Horvath. Exhibits 8 and 9. Ultimately, attorney Horvath sent a fax at 2:32 p.m. informing attorney Ruth that the defendants would accept $215,000 "in satisfaction of the note and mortgage." Exhibit 7.

Consequently, at the end of the day on May 31, attorney Ruth sent attorney Horvath a check for $215,000, saying that it was "with respect to your memo sent by facsimile at 2:32 PM." Exhibit 10. However, in the transmittal letter, attorney Ruth made reference to a fax attorney Horvath had sent earlier in the day, at 12:07 p.m. and asked that attorney Horvath "please refund the amount you calculate as due [the plaintiff]." Id.

Attorney Horvath received attorney Ruth's correspondence on June 4. Upon doing so, he faxed a letter to attorney Ruth, recounting the negotiations of May 31. In that correspondence, he noted that the defendants' last demand, sent at 2:32 p.m., after the 12:07 p.m. fax referred to by attorney Ruth, was for $215,000. Exhibit 11. Attorney Horvath noted that this offer "contained no statement or provision for recalculation. It was $2445.17 less than the first statement and was intended as a counter to your client's 'offer' to agree to a $20,000.00 prepayment penalty." Id. He then went on to say, "I will hold the check until I receive written confirmation that it is intended as full and final payment with no offsets or refunds claimed by [the plaintiff], and that the entire amount can be released to [the defendants]. If such confirmation is not received by Thursday, June 7, 2007, I will return the check and no release of discharge will be provided." Id.

Attorney Ruth's response was to express his displeasure with attorney Horvath's approach to the matter. He sent a fax on June 5, 2007, to attorney Horvath,

stating, "I take exception with your math, your handling of this matter and the adversarialness to an extreme. Kicking a dog when its down is easy to do and nothing to be proud of. Time will tell whether your 'zealousness' worked out to your client's advantage." Exhibit 12.

At virtually the same time that he sent exhibit 12 to attorney Horvath, attorney Ruth sent a second fax. In that fax, attorney Ruth again took issue with attorney Horvath's calculations. Nevertheless, he then went on to say, "It seems you are saying that the $215,000.00 offer superceded all your previous demands, conditions, and agreements. We acknowledge your interpretation and will not anticipate that you will be making a refund to [the plaintiff] based on your recalculation (correction) of the penalty to allow for the provisions of the note. Having said that, we have complied with your offer of $215,000.00. We will not respond to any other demands or conditions you have added after the fact and which were not included in your $215,000.00 offer." Exhibit 13.

On June 6, 2007, attorney Horvath sent a fax to attorney Ruth, noting that "we are happy to have you and [the plaintiff] out of our lives." Exhibit 14. Thereafter, the defendants cashed the check from the plaintiff and provided him with the release of mortgage. The plaintiff accepted and recorded the release of mortgage. Request for Admission, ¶ 25. During the negotiations discussed previously, attorney Ruth was authorized by the plaintiff to negotiate with the defendants or their attorney regarding prepayment of the note. Id., ¶ 26.

The defendants claim that the plaintiff's agreement to pay and their agreement to accept $215,000 for prepayment of the note and release of the mortgage constitutes an accord and satisfaction that precludes the claims now being advanced by the plaintiff. The defendants have pleaded that as a special defense to each of the plaintiff's three counts.

"When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." (Internal quotation marks omitted.) *B & B Bail Bonds Agency of Connecticut, Inc.* v. *Bailey,* 256 Conn. 209, 212–13, 770 A.2d 960 (2001). "To prove an accord and satisfaction, the defendant must show that at the time of the agreement there was a good faith dispute over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim." *Munroe* v. *Emhart Corp.,* 46 Conn. App. 37, 42, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997).

In this case, the defendants claim that the undisputed facts, in particular the documented negotiations between attorneys Ruth and Horvath prove that: (1) the parties had a good faith dispute over the plaintiff's right to prepay the note; (2) the parties had a good faith dispute over the amount of any additional amounts the plaintiff would have to pay in exchange for the defendants' acceptance of a prepayment of the note; and (3) the parties negotiated an accord to settle their dispute. As to the dispute regarding the right to prepay, the defendants point to exhibit 1 in which the plaintiff's attorney explicitly noted that he "anticipate[d] [that] there will be a dispute over a claim for pre-payment penalty . . . ." The subsequent correspondence confirms the existence of such a dispute, specifically, over whether the plaintiff fell within the "financial hardship" exception that would permit him to prepay the note without penalty. See Exhibits 4, 5 and 6.

As to the dispute over the amount of any prepayment penalty, the defendants rely on the correspondence that shows a dispute over how such a penalty should be calculated. See Exhibits 8, 9 and 12. Those letters show

that the attorneys were arguing over whether the plaintiff was entitled to a reduction in any prepayment penalty for the first $10,000 prepaid as set forth in the note. Further, the plaintiff's amended complaint confirms that there was a dispute between the parties over these issues. Amended Complaint, ¶ 17.

Finally, as to the contract of accord settling their dispute, the defendants point to exhibit 13. In that fax, attorney Ruth, on behalf of the plaintiff, acknowledged attorney Horvath's interpretation of the defendants' offer and said that he believed the tender of the check for $215,000 complied with the offer. That offer, conveyed on May 31, 2007, at 2:32 p.m., provided that the defendants would "accept the sum of $215,000.00 in satisfaction of the note and mortgage." Exhibit 7. Further, fax that attorney Ruth "acknowledged" shows that attorney Horvath interpreted his clients' offer "as satisfaction of the outstanding debt of [the plaintiff] and Denise Riley." Exhibit 11.

Thus, the defendants argue that they have established all of the elements of accord and satisfaction.

In response, the plaintiff has offered no evidence to the contrary. Instead, he has made three arguments. First, he argues that as a matter of law the court cannot render summary judgment as to a special defense. Second, he argues that the correspondence between attorneys Ruth and Horvath shows that there was no accord and satisfaction. Finally, he argues that even if there was an accord and satisfaction, it is unenforceable because his client was under duress at the time he entered into any agreement.

As to the first issue, the plaintiff has misinterpreted the law regarding summary judgment as applied to special defenses. According to the plaintiff, "most Superior Court judges who have considered the issue have held that a motion for summary judgment solely as to special

defenses is procedurally improper." Plaintiff's Memorandum of Law, p. 6. What the plaintiff fails to point out is that almost every case on which he relies for this proposition involved the plaintiff moving for summary judgment as to a special defense raised by the defendant. See, e.g., *Lehman Bros. Bank, FSB* v. *Bridges*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-0200206S (August 14, 2006) (*Jennings, J.*) (41 Conn. L. Rptr. 821); *Dubourg* v. *Osborn*, Superior Court, judicial district of Litchfield, Docket No. CV-94-0065070 (July 5, 1995) (*Pickett, J.*); *Rogers* v. *Daley Development Co.*, Superior Court, judicial district of Litchfield, Docket No. 047304 (December 19, 1990) (*Pickett, J.*) (3 Conn. L. Rptr. 76); *Bond* v. *General Accident Ins. Co. of America*, Superior Court, judicial district of New London, Docket No. 538646 (September 4, 1988) (*Handy, J.*) (23 Conn. L. Rptr. 181). In each case, the court refused to consider the motion for summary judgment because merely eliminating the special defense, if summary judgment was rendered, would not dispose of the plaintiff's cause of action.

The situation is much different, though, when a defendant is moving for summary judgment on one of his special defenses that would be dispositive.[2] For example, where the undisputed facts show that the plaintiff's claim is time barred there is no reason not to render summary judgment on a special defense that asserts the statute of limitations and dispose of the matter. For this reason, numerous cases of both our Supreme Court

---

[2] This distinction is clearly laid out in one of the cases relied upon by the plaintiff. In *Bond* v. *General Accident Ins. Co. of America*, supra, 23 Conn. L. Rptr. 182, the court refused to consider the plaintiff's motion for partial summary judgment because it was procedurally improper. By contrast, the court considered on the merits, the defendant's motion for summary judgment as to three of its special defenses. While the court denied the defendant's motion because there were genuine issues of material facts as to each defense, the court never suggested that the defendant's motion was procedurally improper.

and the Appellate Court have affirmed the rendering of summary judgment in favor of the defendant on one of its special defenses. See, e.g., *Cadlerock Joint Venture II, L.P.* v. *Milazzo*, 287 Conn. 379, 389, 949 A.2d 450 (2008) (statute of limitations); *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, supra, 235 Conn. 202–206 (exclusion from coverage); *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, supra, 196 Conn. 543 (workers' compensation was plaintiff's exclusive remedy); *Grignano* v. *Milford*, 106 Conn. App. 648, 650, 943 A.2d 507 (2008) (governmental immunity); *Snyder* v. *Seldin*, 81 Conn. App. 718, 721–22, 841 A.2d 701 (2004) (exclusivity of remedy). Further, the court has located dozens of cases in the last ten years in which the Superior Court has rendered summary judgment in favor of the defendant on a special defense.

In fact, three different judges have recently rendered summary judgment on the same special defense of accord and satisfaction that has been raised here. See *Sawyer* v. *Damon*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-03-0070830 (December 5, 2005) (*Martin, J.*) (40 Conn. L. Rptr. 409); *Civie* v. *Lewis Laboratories International Ltd.*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-03-0070471 (May 4, 2005) (*Riley, J.*) (39 Conn. L. Rptr. 275); *DeCorso* v. *Kupstis*, Superior Court, judicial district of Waterbury, Docket No. CV-03-0179472S (June 4, 2004) (*Agati, J.*). In each case, the undisputed facts proved an accord of a disputed debt. In each case, a trial would have served no purpose. Even if the plaintiff could have established the elements of his claim, the court would still have been required to render judgment based on the special defense. The same is true here. If the court concludes that the undisputed facts establish an accord of a disputed debt, a trial on the plaintiff's allegations would be waste of

time. For this reason, the plaintiff's first argument is rejected.

The plaintiff's second argument in opposition to the defendants' motion is that the undisputed facts show that there was no accord and satisfaction. In particular, the plaintiff argues that: (1) the defendants' claim for a prepayment penalty was not in good faith; (2) there was no meeting of the minds regarding whether the plaintiff's payment constituted an accord; and (3) the plaintiff received no consideration because he was entitled to the release of mortgage without paying any additional sums to the defendants.

The plaintiff's first and third arguments are essentially the same. If the defendants were acting in good faith when making their demand, then the plaintiff received consideration for his payment, i.e., the release by the defendants of their good faith demand. Conversely, if the defendants gave the plaintiff no consideration for the additional payment, i.e., they did only what they were otherwise required to do, then they acted in bad faith. Because the plaintiff's arguments are opposite sides of the same coin, the court will consider them together.

The heart of the plaintiff's argument is that paragraph 22 of the mortgage required the defendants to release the mortgage upon payment of the amount due under the note. The plaintiff argues that this means that he was entitled to a release of the mortgage upon payment of the then outstanding balance on the note. The plaintiff further argues that the note, although limiting when the plaintiff could prepay the note, contains no provision for a prepayment penalty.

The issue is not whether this argument would have prevailed if the matter had been litigated in the absence of any agreement in June, 2007. Instead, the question is whether the plaintiff's rights were so far beyond doubt

as to preclude a good faith dispute regarding the defendants' right to a prepayment penalty. The undisputed facts establish that the plaintiff knew from the outset, before the defendants or their attorney said anything, that prepayment was going to be an issue. In his first correspondence to attorney Horvath, attorney Ruth stated, "I anticipate there will be a dispute over a claim for pre-payment penalty . . . ." Exhibit 1. Thereafter, again prior to any demand for a prepayment penalty from the defendants, attorney Ruth advised attorney Horvath and Ms. Pierson that "[the plaintiff] is willing to voluntarily pay a small penalty." Exhibit 4. After the defendants set forth their demand, attorney Ruth responded by saying that "[the plaintiff] is offering to agree to a $20,000.00 prepayment penalty." Exhibit 6. He went on to state that "[t]he promissory note is much less clear than you may believe and it was prepared by the holder, with ambiguities in favor of my client. In one place the note says it may not be prepaid, but in another it states it can be prepaid, but with a penalty." Id.

The statements of the plaintiff's attorney during negotiations, even viewing them in a light most favorable to the plaintiff, show that there was a good faith dispute over the right to a prepayment penalty. The facts that the plaintiff both knew that such a payment would likely be demanded and offered to make one even before the defendants raised the issue show that the plaintiff was neither shocked nor surprised that the defendants would expect compensation for giving up their rights to reject prepayment of the note.

Of further significance is the fact that not once during the negotiations between the parties did the plaintiff, either himself or through attorney Ruth, raise the argument based on the mortgage that the plaintiff is now

making. Instead, the plaintiff's entire focus during nego-
tiations was on whether he fell under the financial hard-
ship exception that permitted prepayment. As to that
issue, attorney Ruth argued during negotiations that
"the financial hardship outcome could go either way."
Exhibit 6.

Finally, the plaintiff has offered no evidence to
counter that offered by the defendants. He has offered
no affidavit from attorney Ruth or anyone else reflecting
a view that the defendants were acting in bad faith and
without a basis to seek additional compensation.

Based on the unrebutted evidence presented, viewed
in a light most favorable to the plaintiff, the court finds
that there was a good faith dispute over the defendants'
right to refuse a prepayment or demand additional com-
pensation to agree to one. Consequently, the court also
finds that the plaintiff received consideration for his
payment in that the defendants gave up their claimed
right, asserted in good faith, to object to a prepayment.

The question still remains as to whether the
agreement the parties reached in June, 2007, constitutes
an accord of all issues. The plaintiff claims that there
was no meeting of the minds and that he maintained
his right to bring this action to challenge the prepayment
penalty he made to acquire the release of the mortgage.
In essence, the plaintiff claims that he made the pay-
ment "under protest."

The undisputed facts, even viewed in a light most
favorable to the plaintiff, do not support this claim. In
his first correspondence, the plaintiff, through attorney
Ruth, offered to pay a prepayment penalty "under pro-
test . . . ." Exhibit 1. This suggestion was rejected by
attorney Horvath in his first demand to attorney Ruth.
Exhibit 5. In the offer that the plaintiff ultimately
accepted, attorney Horvath clearly stated that the
defendants would "accept the sum of $215,000.00 in

satisfaction of the note and mortgage." Exhibit 7. He later set forth his interpretation of his clients' offer in virtually the same words: "[The defendants] would accept the sum of $215,000.00 as satisfaction of the outstanding debt of [the plaintiff] and Denise Riley." Exhibit 11. Attorney Ruth's acceptance letter of these terms was clear. He first acknowledged attorney Horvath's interpretation and then stated, "we believe we have fully complied with your offer of $215,000.00." Exhibit 13. Because the offer accepted provided that it was in satisfaction of the note and mortgage, the plaintiff accepted those terms. He reserved no right to protest the amount he was paying. Significantly, the plaintiff offers no evidence himself or from his attorney, claiming that they were reserving any rights when they agreed to the defendants' terms.

The most the plaintiff can do is point to the defendants' initial demand for a letter signed by the plaintiff accepting the defendants' calculations and say that because that was never provided there was no meeting of the minds on the final amount due the defendants. That argument carries little weight. That demand was at the outset of the negotiations before there was any agreement on a number. As noted previously, after much back and forth, the plaintiff's attorney conceded that the $215,000 payment was in full satisfaction of the note and mortgage.

Similarly, the plaintiff argues that in his last correspondence to attorney Horvath, attorney Ruth stated, "[w]e will not respond to any other demands or conditions you have added after the fact and which were not included in your $215,000.00 offer." Exhibit 13. According to the plaintiff, this was intended as a reference to attorney Horvath's demand for "written confirmation that this is intended as full and final payment with no offsets or refunds claimed by [the plaintiff], and that the entire amount can be released to [the

defendants]." Exhibit 11. The plaintiff, though, offers no evidence to support this claim. He has submitted no documentation or any affidavits from the plaintiff or his attorney that exhibit 13 was intended to convey the meaning now claimed. Even if he did, it would make no difference. By his express language, the plaintiff's attorney accepted the $215,000 offer set forth in exhibit 7. By its terms, that was paid "in satisfaction of the note and mortgage."

In the end, the undisputed facts show that the plaintiff resolved a disputed debt with the defendants by agreeing, through his attorney, to a payment of $215,000 to the defendants. There is no evidence that he reserved any rights to later dispute that payment. In fact, the undisputed evidence proves that the defendants were unwilling to settle this dispute if the plaintiff was going to retain any rights of protest, and that the plaintiff, through his attorney, acceded to the defendants' demand.

Finally, the plaintiff claims that the agreement reached in June, 2007, is unenforceable because the plaintiff was under duress when he entered into it. This argument requires little discussion. As the plaintiff notes, a claim of duress requires an improper threat by the other party. In addition, the remedy for a party under duress is to void the contract at his choosing. Plaintiff's Memorandum of Law, p. 16. First, for the reasons set forth previously, there is no evidence here of an improper threat. The undisputed evidence proves that the defendants had a good faith basis to assert their position. Simply pursuing a good faith position is not an improper threat. Second, the plaintiff is not seeking to void his agreement with the defendants. He has no desire, or even the ability, to return to the defendants the release of mortgage they gave him. He simply wants back what he considers to be an overpayment while retaining the benefits of the release. There is no such

right. Plaintiff's Memorandum of Law, p. 17 ("[b]ecause the threat amounts to a use for illegitimate ends of A's power not to supply water, *the contract is voidable by B*" [emphasis added]).

Finally, the plaintiff has submitted no evidence of duress. While the negotiation correspondence does reflect time sensitivity to the transaction, a week prior to the parties' final agreement attorney Ruth wrote to attorney Horvath that "[s]ome of the pressure may be off as the title company has agreed to insure over your mortgage, thus providing time to resolve the issues." Exhibit 6. Thereafter, neither the plaintiff nor his attorney expressed any concerns about time pressures. Nor has the plaintiff submitted an affidavit or any other documentary support for a claim of duress. For these reasons there is no triable issue as to duress.

For the foregoing reasons, the defendants are entitled to summary judgment on their special defense of accord and satisfaction. Because the defendants have pleaded that special defense to each of the plaintiff's three claims, summary judgment shall enter for the defendants as to all three counts of the amended complaint.

## IV

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff has moved for summary judgment, claiming that the mortgage is clear on its face that the plaintiff was entitled to a release upon the payment of all sums due under the note. Plaintiff's Memorandum of Law, p. 5. He further argues that because the note does not provide for a prepayment penalty it is undisputed, based on the language of the document, that the defendants were not entitled to one.

The problem with these arguments is that the plaintiff is ignoring the context in which he is making them. The court is not addressing who would have prevailed in

the legal dispute that was being debated by attorneys Horvath and Ruth at the end of May, 2007. As noted previously, the court finds that the undisputed evidence proves that the parties reached an accord as to that dispute with a payment from the plaintiff to the defendants and the defendants' release of the mortgage. The plaintiff could only succeed on his motion if the court found, as a matter of law, that the defendants had acted in bad faith in demanding additional consideration for waiving their right to object to prepayment of the note.

For the reasons set forth previously, the court makes no such finding. To the contrary, the undisputed evidence shows that the defendants' demand for additional compensation was not made in bad faith. The note itself is clear that the defendants had a right to object to a prepayment. It further provides that unless the plaintiff could satisfy either the financial hardship or medical exceptions, and did so within a specified time period, he could not prepay the note "without penalty . . . ." While the plaintiff argued that he fell under the financial hardship exception that would have allowed prepayment, even viewing the evidence in a light most favorable to the plaintiff, the defendants' dispute of that claim was not made in bad faith. They set forth arguments against the plaintiff's claim to which the plaintiff's attorney argued only that the argument "could go either way." Exhibit 6.

Second, the plaintiff knew, before the defendants said anything, that prepayment was going to be an issue. In fact, the plaintiff was the first to suggest that he was willing to pay a small penalty to resolve the dispute, before the defendants even demanded one. Exhibit 4.

Third, the defendants provided calculations and reasons for the additional compensation they requested. Exhibit 5. The plaintiff has offered no evidence to show

that there was not a good faith basis for these calculations.

The plaintiff has submitted no evidence in support of his motion to address any of these issues. Having failed to do so, and in light of the evidence submitted by the defendants in support of their motion for summary judgment, the plaintiff's motion must be denied.

## V

## CONCLUSION

For the reasons set forth previously, the defendants' motion for summary judgment is granted. The plaintiff's motion for summary judgment is denied.